Filed 7/7/14

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| Conservatorship of the Estate of<br>IDA McQUEEN.<br>_____ | )<br>)<br>) | |
| FESSHA TAYE, as Conservator, etc., | ) | |
| Plaintiff and Respondent, | )<br>) | |
| | ) | S209376 |
| v. | )<br>) | Ct.App. 1/4 A134337 |
| CAROL VERES REED, | ) | |
| | ) | Alameda County |
| Defendant and Appellant.<br>_____ | )<br>) | Super. Ct. No. HP05237122 |

Under Code of Civil Procedure section 685.040,[1] a judgment creditor is entitled to the reasonable and necessary costs of enforcing the judgment, including statutory attorney fees "otherwise provided by law."  A motion to claim enforcement costs must, however, be made "before the judgment is satisfied in full."  (§ 685.080, subd. (a).)

In the present case, plaintiff Fessha Taye, conservator of the estate of Ida McQueen, prevailed at trial in an action for financial abuse of an elder or dependent adult, for which Welfare and Institutions Code section 15657.5, subdivision (a) provides an award of attorney fees to a prevailing plaintiff.

_____

[1]     All further unspecified statutory references are to the Code of Civil Procedure.

1

Defendant Carol Veres Reed appealed, but the judgment was affirmed. The parties settled a separate action plaintiff brought after judgment seeking to prevent or reverse defendant's transfer of real property to third persons. The question presented is whether plaintiff's motion to recover attorney fees incurred both on appeal from the elder abuse judgment and in the separate action over real property assets was subject to the time limitation of section 685.080, namely that it be made before the judgment was fully satisfied.

We conclude that as to attorney fees on appeal from the elder abuse judgment, the motion was not subject to section 685.080, because plaintiff's efforts in opposing defendant's appeal of the judgment were not undertaken to *enforce* the judgment but to defend it against reversal or modification. Where a statute provides for attorney fees, they are generally available both at trial and on appeal (*Morcos v. Board of Retirement* (1990) 51 Cal.3d 924, 927), and the procedure for their recovery is set out by court rule rather than by section 685.080. (See Cal. Rules of Court, rules 3.1702(c)(1), 8.278(c).) Plaintiff's separate action to prevent transfer of assets was, however, brought in aid of the judgment's enforcement, and fees incurred in that action could only be recovered under section 685.040, making them subject to the time limits of section 685.080, subdivision (a). We will therefore affirm in part and reverse in part the judgment of the Court of Appeal, which held both sets of fees subject to section 685.080, subdivision (a).

### FACTUAL AND PROCEDURAL BACKGROUND

Ida McQueen, the conservatee on whose behalf plaintiff is acting, is a physically and mentally disabled woman born in 1935. She uses a wheelchair and is unable to read or write. McQueen's late father established a testamentary trust for McQueen, giving her the right to live in the family's Oakland residence (held in the trust) and to receive the trust's net income during her lifetime. Defendant

2

Reed, an attorney whose father had drafted the will, prepared the order creating the trust.

In 2000, McQueen left the home for a skilled nursing facility and, eventually, for a community care facility. While she was in the skilled nursing facility, defendant Reed obtained McQueen's mark on a power of attorney in favor of McQueen's sister. In 2004, McQueen's uncle, acting in his capacity as trustee of the testamentary trust, sold the Oakland home for $240,000, without McQueen's consent or authorization from the probate court. Reed, the attorney for the trust, distributed the proceeds to various members of McQueen's family, but McQueen herself received nothing.

Plaintiff was appointed limited conservator of McQueen's estate in 2005 and brought this action against Reed, her brother Richard K. Veres (who helped Reed obtain the power of attorney), and several members of McQueen's family.[2] The jury found Reed liable for financial elder abuse, breach of fiduciary duty and conversion. Based on her liability under the financial elder abuse statute, which contains a costs and fees provision (Welf. & Inst. Code, § 15657.5, subd. (a)), the trial court ordered Reed to pay plaintiff's prejudgment attorney fees and costs totaling more than $300,000. The Court of Appeal affirmed the judgment. This court denied review, and the remittitur issued on June 15, 2011.

While the first appeal in this case was pending, plaintiff brought a separate action against Reed, her husband James E. Reed, and their two children, alleging that after the jury's verdict against Reed, Reed and her husband "began transferring a number of parcels of real property out of her name and to other family members in order to avoid payment of the judgment . . . ." In May of 2010,

---

[2] Of the original defendants, only Reed is a party to the present appeal.

3

plaintiff voluntarily dismissed that action (hereafter the fraudulent transfer action) in exchange for the defendants' agreement, inter alia, to transfer one of the properties back to Reed.

By a series of payments in June and July of 2011, defendant paid plaintiff an amount the parties agreed was equal to the trial court judgment plus accrued interest. Defendant's check for the final amount was honored on July 15, 2011.

On July 25, 2011, plaintiff filed the motion for costs and attorney fees that is the subject of this appeal. The motion sought $57,681.90 in fees and costs incurred in briefing and arguing the appeal and in prosecuting the fraudulent transfer action. The trial court, rejecting defendant's argument that her satisfaction of the underlying judgment had cut off plaintiff's right to seek fees on appeal, granted plaintiff's motion for fees and costs incurred on appeal and in the fraudulent transfer action.

The Court of Appeal reversed, holding the fee and cost motion was untimely under section 685.080, subdivision (a). We granted plaintiff's petition for review.

## DISCUSSION

Welfare and Institutions Code section 15657.5, subdivision (a), provides that when a case of financial elder abuse (Welf. & Inst. Code, § 15610.30) has been proven, "in addition to compensatory damages and all other remedies otherwise provided by law, the court shall award to the plaintiff reasonable attorney's fees and costs."

Title 9 of part 2 of the Code of Civil Procedure (§§ 680.010–724.260) is known as the Enforcement of Judgments Law. (§ 680.010.) Section 685.040 provides: "The judgment creditor is entitled to the reasonable and necessary costs of enforcing a judgment. Attorney's fees incurred in enforcing a judgment are not included in costs collectible under this title unless otherwise provided by law.

4

Attorney's fees incurred in enforcing a judgment are included as costs collectible under this title if the underlying judgment includes an award of attorney's fees to the judgment creditor pursuant to subparagraph (A) of paragraph (10) of subdivision (a) of Section 1033.5."[3]  Section 685.080, subdivision (a) provides in part:  "The judgment creditor may claim costs authorized by Section 685.040 by noticed motion.  The motion shall be made before the judgment is satisfied in full, but not later than two years after the costs have been incurred."[4]

Recovery of costs incurred on appeal is statutorily authorized by section 1034, subdivision (b):  "The Judicial Council shall establish by rule allowable costs on appeal and the procedure for claiming those costs."  The California Rules of Court[5] address the procedure for recovery of attorney fees on appeal in rule 3.1702(c), which provides:  "A notice of motion to claim attorney's fees on appeal . . . under a statute or contract requiring the court to determine entitlement to the fees, the amount of the fees, or both, must be served and filed within the time for serving and filing the memorandum of costs under rule 8.278(c)(1) in an unlimited civil case or under rule 8.891(c)(1) in a limited civil case."  Rule 8.278(c)(1), in turn, specifies that a memorandum of costs on appeal is to be filed in the superior court "[w]ithin 40 days after the clerk sends notice of issuance of the remittitur."

---

**3**     The "subparagraph" referred to (§ 1033.5, subd. (a)(10)(A)) provides that attorney fees are allowable as costs when authorized by contract.

**4**     Section 685.070 provides the judgment creditor with an alternative procedure:  Certain costs and fees may be claimed by a memorandum of costs rather than by motion.  The time limit is the same, however.  The memorandum must be filed and served "[b]efore the judgment is fully satisfied but not later than two years after the costs have been incurred."  (*Id.*, subd. (b).)

**5**     All unspecified rule references are to the California Rules of Court.

Plaintiff contends the fees he sought for responding to defendant's appeal and prosecuting the fraudulent transfer action were authorized by Welfare and Institutions Code section 15657.5, subdivision (a), independently of the Enforcement of Judgments Law.  As to the appellate fees, specifically, he argues his motion was timely under rules 3.1702(c) and 8.278(c)(1), and in that respect he enjoys the support of two amici curiae, who urge us to hold appellate fees are not governed by the Enforcement of Judgments Law.  Defendant, on the other hand, maintains that all the fees awarded on plaintiff's motion were sought and obtained under section 685.040, making the motion untimely under section 685.080.

Because our analysis of the two sets of attorney fees sought here — those incurred on appeal and those incurred in prosecuting the fraudulent transfer action — differs, we address them separately.

## I.  Attorney Fees Incurred Responding to the Appeal

We agree with plaintiff and the amici curiae that where attorney fees are authorized by statute (as they were here by Welf. & Inst. Code, § 15657.5, subd. (a)), fees awarded for expenses incurred on appeal from the trial court judgment are not governed by the procedures of the Enforcement of Judgments Law.  Rather, they are recovered under the procedures set forth in court rules promulgated pursuant to Code of Civil Procedure section 1034, subdivision (b).

Nothing in our statutes or court rules suggests appellate fees come within the Enforcement of Judgments Law.  The statutes and rules distinctly address three different types of costs and fees:  *prejudgment* costs, including attorney fees where authorized by contract, statute or law (§ 1033.5, subd. (a)(10)), are recovered through procedures established under section 1034, subdivision (a) and rules

6

3.1700 and 3.1702(b)**6**; *appellate* costs and fees are recovered under section 1034, subdivision (b) and rules 3.1702(c) and 8.278**7**; and postjudgment *enforcement* costs and fees are recovered under the Enforcement of Judgments Law, specifically sections 685.040 to 685.095.

Speaking more broadly, our procedural statutes and rules do not treat civil appeals as a part of the enforcement of judgment process. As stated above, the Enforcement of Judgments Law constitutes title 9 of part 2 of the Code of Civil Procedure, while civil appeals are governed by title 13 of that part (§§ 901–923) and by court rules prescribed pursuant to section 901. Under section 916, subdivision (a), the perfecting of an appeal generally stays, inter alia, "enforcement of the judgment or order" appealed from. Similarly, section 708.010, subdivision (b), part of the Enforcement of Judgments Law, provides for a stay of certain discovery procedures in aid of enforcement "[i]f enforcement of the judgment is stayed on appeal by the giving of a sufficient undertaking." (See also, § 697.040, subd. (a) [effect on liens when "enforcement of the judgment is stayed on appeal"].) In all these statutes, "enforcement" clearly refers to proceedings other than the appeal.

While the Enforcement of Judgments Law does not define "enforcement," it nowhere suggests the term encompasses appeals. The law addresses in detail several means of enforcing a judgment, including liens on real and personal

---

**6**     Rule 3.1702(b) provides that a motion for prejudgment attorney fees must generally be filed within the time set by rule for filing a notice of appeal.

**7**     There are two exceptions: Fees incurred in an *interlocutory* appeal are governed by rule 3.1702(b) rather than rule 3.1702(c), and appellate fees in a *limited* civil case must be filed within the time set in rule 8.891(c)(1) rather than in rule 8.278(c)(1).

property (§§ 697.010–697.920), writs of execution (§§ 699.010–701.830), garnishment of wages (§§ 706.010–706.154) and writs of possession or sale (§§ 712.010–716.030). It also addresses in detail the effect and adjudication of third party claims (§§ 720.010–720.660) and the procedures governing satisfaction of the judgment (§§ 724.010–724.260). It does not, however, address procedures for appeal from the judgment; as already noted, those procedures are set out elsewhere in the Code of Civil Procedure and in the California Rules of Court.

Regarding costs and fees, section 685.040, which generally authorizes a judgment creditor's recovery of enforcement costs, makes no reference or allusion to the creditor's defense of a judgment debtor's appeal. Section 685.070, subdivision (a) specifies the "costs of enforcing a judgment" that may be claimed through a memorandum of costs; the subdivision lists statutory fees relating to the abstract of judgment, a notice of judgment lien or a writ of enforcement, statutory costs and fees of a levying officer, and costs in connection with discovery of assets, but it makes no reference or allusion to costs incurred defending an appeal.

Legislative history connected to a 1992 amendment to section 685.040 (Stats. 1992, ch. 1348, § 3, p. 6707) confirms that, with regard to attorney fees specifically, the Legislature understood fees incurred on appeal to be distinct from fees incurred in enforcing a judgment. The 1992 amendment, which added section 685.040's last sentence,[8] was designed to abrogate *Chelios v. Kaye* (1990) 219 Cal.App.3d 75, holding the statute did not authorize awarding a judgment creditor attorney fees for enforcement despite an underlying judgment allowing such fees

---

**8** "Attorney's fees incurred in enforcing a judgment are included as costs collectible under this title if the underlying judgment includes an award of attorney's fees to the judgment creditor pursuant to subparagraph (A) of paragraph (10) of subdivision (a) of Section 1033.5." (§ 685.040; see fn. 3, *ante*.)

pursuant to a contract provision. (See *id.* at pp. 79–81.) A committee report noted the contrast between the *Chelios* result—contractually authorized fees could not be recovered for enforcement of the judgment—and the settled rule that such fees *could* be recovered if incurred in an appeal; the proposed amendment would "assure that contract provisions which provide for attorneys' fee [*sic*] are enforceable *regardless of whether they are incurred in enforcing the judgment or in an appeal of the judgment.*" (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 2616 (1991–1992 Reg. Sess.) as amended Aug. 12, 1992, p. 5, italics added.) Though the substance of the 1992 amendment is not directly relevant to the present case, the italicized language indicates the Legislature, in amending section 685.040, acted with the understanding that the fees for *enforcement* of a judgment governed by that law were distinct from fees incurred on *appeal* from the judgment.

Not surprisingly, given the distinct statutory treatment of enforcement and appeal, treatises also address the two topics separately. A practitioner's guide to enforcement of judgments (Ahart, Cal. Practice Guide: Enforcing Judgments and Debts (The Rutter Group 2013)) contains no chapter on appeal from the judgment, and its thorough discussion of enforcement fees and costs (*id.*, ¶¶ 6:33–6:55.2) mentions fees and costs on appeal only once (*id.*, ¶ 6:54.2), as part of its discussion of when interest on *each type* of fees and costs (prejudgment, enforcement and appellate) begins accruing (*id.*, ¶¶ 6:54–6:54.2). Witkin's treatise on civil procedure, similarly, discusses appeals and the enforcement of judgments in completely separate chapters, and discusses recovery of costs and fees incurred in those procedural contexts separately as well. (See 8 Witkin, Cal. Procedure (5th ed. 2008) Enforcement of Judgment, §§ 46–49, pp. 86–91; 9 Witkin, Cal. Procedure, *supra*, Appeal, §§ 953–982, pp. 1008–1029.)

9

Nor have California decisions regarded appellate attorney fees authorized by statute as substantively dependent on the Enforcement of Judgments Law; rather, the substantive fee-shifting statutes themselves have generally been construed as authorizing an award of appellate fees. In *Serrano v. Unruh* (1982) 32 Cal.3d 621, 637, holding section 1021.5 (fees in private attorney general action) authorizes an award for fees incurred defending an earlier fee award on appeal, we explained: "It is defendants' position that no fees are recoverable for defending the fee award on appeal because the appeal did not independently meet the requirements of section 1021.5. Yet it is established that fees, if recoverable at all — pursuant either to statute or parties' agreement — are available for services at trial and on appeal." In *Morcos v. Board of Retirement*, *supra*, 51 Cal.3d at page 927 (*Morcos*), holding Government Code section 31536 (fees for successful action to reverse administrative denial of retirement benefits) authorizes attorney fees for defending the superior court judgment on appeal, we relied on "settled case law which has established the general principle that statutes authorizing attorney fee awards in lower tribunals include attorney fees incurred on appeals of decisions from those lower tribunals." Neither decision relies on the Enforcement of Judgments Law or any predecessor statute.

Defendant points out that *Morcos* involved a public entity defendant (as did *Serrano v. Unruh, supra,* 32 Cal.3d 621), a class as to which the Enforcement of Judgments Law has only limited application. (See §§ 695.050, 712.070.) The principle enunciated in *Morcos*, however, has been applied many times in suits between private parties approving appellate fee awards, without any reference to the Enforcement of Judgments Law. (See, e.g., *Jankey v. Lee* (2012) 55 Cal.4th 1038, 1057; *Carpenter v. Jack In The Box Corp.* (2007) 151 Cal.App.4th 454, 461; *Kirby v. Sega of America, Inc.* (2006) 144 Cal.App.4th 47, 62; *Wilkerson v. Sullivan* (2002) 99 Cal.App.4th 443, 448; *Grade-Way Construction Co. v. Golden*

10

*Eagle Ins. Co.* (1993) 13 Cal.App.4th 826, 837–838.) Appellate attorney fees authorized by statute do not depend substantively on the Enforcement of Judgments Law. Procedurally, as we have seen, they are governed by the Rules of Court rather than the Enforcement of Judgments Law.

The Court of Appeal, in holding that *all* the fees plaintiff sought were subject to the time limits of the Enforcement of Judgments Law, pursued its analysis largely without distinguishing between fees incurred defending the appeal and those incurred prosecuting the fraudulent transfer action. The main decisions upon which the lower court relied (*Ketchum v. Moses* (2001) 24 Cal.4th 1122; *Globalist Internet Technologies, Inc. v. Reda* (2008) 167 Cal.App.4th 1267; *Jaffe v. Pacelli* (2008) 165 Cal.App.4th 927; *Carnes v. Zamani* (9th Cir. 2007) 488 F.3d 1057) support its holding, if at all, only as to fees incurred in the fraudulent transfer action; none holds or states that *appellate* fees are recovered pursuant to the Enforcement of Judgments Law.[9]

Nor does the first sentence of rule 3.1702(a), upon which the Court of Appeal also relied, support the conclusion the Enforcement of Judgments Law, rather than the Rules of Court, sets the procedure for recovery of appellate fees. That sentence states: "*Except as otherwise provided by statute,* this rule applies in civil cases to claims for statutory attorney's fees and claims for attorney's fees

---

[9] In *Jaffe v. Pacelli*, *supra*, 165 Cal.App.4th 927, the cost and fee motion at issue did include, among several other items, fees the plaintiff incurred in defending the judgment on appeal. (See *id.* at pp. 930, 933.) The defendant, however, raised no challenge to the trial court's grant of those fees and costs; the only issue raised (on the *plaintiff's* appeal from the cost and fee order) was the propriety of the trial court's *denial* of fees and costs incurred in federal bankruptcy proceedings. (*Id.* at pp. 933–934.) In none of the other three decisions cited above did the cost and fee motions at issue include any fees or costs incurred in defending an appeal from the judgment.

11

provided for in a contract." (Rule 3.1702(a), italics added.) The Court of Appeal reasoned that the italicized clause showed "rule 3.1702 was not intended to prevail over the statutory language of sections 685.070 and 685.080, both of which plainly preclude a postjudgment request for additional fees and costs after the judgment has been fully satisfied."

If the cited sections of the Enforcement of Judgments Law applied to the appellate fees sought here, we might agree with the lower court's reasoning. The cited sections, however, apply only to attorney fees "allowed" and "authorized" by section 685.040. (§ 685.070, subd. (a)(6)); § 685.080, subd. (a).) Section 685.040, in turn, pertains solely to the recovery of costs and fees incurred "enforcing a judgment." As seen above, defending the judgment on appeal is not an aspect of "enforcing" it for these purposes. There is, therefore, no conflict between the Enforcement of Judgments Law and the Rules of Court as to the procedures for claiming such appellate fees, and no occasion here to invoke the exception in rule 3.1702(a).

Finally, the Court of Appeal correctly observed that the trial court, in its order granting plaintiff's motion for costs and fees, cited section 685.040. In the same order, however, the trial court found the motion timely under the Rules of Court. In any event, a trial court's order will ordinarily be upheld if it is legally correct on any basis. (*In re Marriage of Burgess* (1996) 13 Cal.4th 25, 32; *Davey v. Southern Pacific Co.* (1897) 116 Cal. 325, 329.) Certainly, that the trial court at one point cited authority inapplicable to appellate fees does not warrant reversing its otherwise correct order granting those fees.

Plaintiff's motion for costs and fees was filed on the 40th day after the Court of Appeal issued its remittitur from the first appeal in this case. As to the fees plaintiff incurred in opposing defendant's appeal from the judgment, therefore, the motion was timely under rules 3.1702(c) and 8.278(c)(1).

12

## II. Attorney Fees Incurred in the Fraudulent Transfer Action

In contrast with the proposed holding above regarding appellate fees, we agree with defendant and the Court of Appeal that as to fees incurred prosecuting his separate fraudulent transfer action, plaintiff's motion was untimely under section 685.080, subdivision (a).

Although incurred in a separate proceeding, the attorney fees plaintiff claims for prosecuting the fraudulent transfer action were expended in an effort to maintain assets in defendant's hands for potential satisfaction of the judgment in *this* case. They therefore came within the scope of what could be claimed, in this case, under section 685.040. "Attorney fees incurred in one action may be considered necessary litigation costs in another." (*Globalist Internet Technologies, Inc. v. Reda*, *supra*, 167 Cal.App.4th at p. 1275; see *id.* at pp. 1273–1276 [fees incurred defending a separate action to enforce a settlement may be recovered under § 685.040]; *Jaffe v. Pacelli*, *supra*, 165 Cal.App.4th at pp. 936–938 [same, as to fees incurred in opposing the judgment debtor's federal bankruptcy petition].)

Plaintiff agrees his fraudulent transfer action fees were incurred in enforcement of the judgment, but maintains that when a substantive fee-shifting statute such as Welfare and Institutions Code section 15657.5 applies, attorney fees for enforcement may be recovered "irrespective of" the Enforcement of Judgments Law. He argues the Enforcement of Judgments Law's time limits apply only when fees are sought *under that law itself*, "as opposed to any other law or statute."

We find plaintiff's construction of the Enforcement of Judgments Law untenable because section 685.040 is not itself a substantive fee-shifting statute. In providing that "[a]ttorney's fees incurred in enforcing a judgment are not included in costs collectible under this title unless otherwise provided by law,"

13

section 685.040 creates no independent authority for awarding attorney fees; one cannot seek fees under the substantive authority of this provision of section 685.040 itself. If "unless otherwise provided by law" did not refer to separate substantive fee-shifting statutes, therefore, it would have *no* application. Under plaintiff's construction, fees provided for in a separate fee-shifting statute would be recoverable under that statute, not through section 685.040. Any fees not provided for by a fee-shifting statute (and not authorized by a contractual provision, as addressed in the section's last sentence) would simply not be recoverable. Had the Legislature meant to implement such a rule it could have simply stated that "[a]ttorney's fees incurred in enforcing a judgment are not included in costs collectible under this title," and ended the sentence there.

Rather than construe section 685.040 implausibly so as to effectively nullify one of its provisions (see *California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 633), we adhere to the reading we gave the statute in *Ketchum v. Moses*, *supra*, 24 Cal.4th 1122. In discussing the proper calculation of attorney fees pursuant to section 425.16, subdivision (c), which authorizes fee awards to successful SLAPP movants, we held fees incurred in litigating the fee award itself could be recovered under section 685.040: "The statute provides that attorney fees incurred in enforcement efforts 'are not included in costs collectible under this title unless otherwise provided by law.' Under its provisions, a litigant entitled to costs for successfully enforcing a judgment is entitled to costs, but not attorney fees *unless there is some other legal basis for such an award*. Because Code of Civil Procedure section 425.16, subdivision (c) provides a legal right to attorney fees, they are a permissible item of costs." (*Ketchum v. Moses*, *supra*, at p. 1141, fn. 6; accord, *Lucky United Properties Investment, Inc. v. Lee* (2010) 185 Cal.App.4th 125, 140; see also, *Berti v. Santa Barbara Beach Properties* (2006) 145 Cal.App.4th 70, 77 [§ 685.040 encompasses

14

fees authorized by Corp. Code, former § 15634].) In other words, when a fee-shifting statute provides the substantive authority for an award of attorney fees, any such fees incurred in enforcement of the judgment are within the scope of section 685.040.

To support his theory that enforcement fees may be recovered independently of section 685.040, plaintiff relies primarily on *Downen's, Inc. v. City of Hawaiian Gardens Development Agency* (2001) 86 Cal.App.4th 856. The court in that case held section 1036, which allows the prevailing plaintiff in an inverse condemnation action to recover costs and attorney fees "incurred because of that proceeding," authorized an award of litigation expenses incurred in a writ proceeding undertaken to enforce the inverse condemnation judgment. (*Downen's*, *supra*, at pp. 860–863.) While the *Downen's* court did hold the enforcement costs and fees in that case could be recovered outside the Enforcement of Judgments Law, the court based that conclusion on its understanding the Enforcement of Judgments Law *did not apply at all* to the judgment at issue, a money judgment against a local agency in an inverse condemnation action. (*Downen's*, *supra,* at pp. 863–864.) *Downen's* cannot be read as suggesting a plaintiff may ignore the procedural requirements of the Enforcement of Judgments Law when seeking enforcement fees in a proceeding to which that law applies, such as the private civil action involved here.

Finally, plaintiff contends that even if the procedures of the Enforcement of Judgments Law apply to the attorney fees he incurred in the fraudulent transfer action, the law should be construed to allow a motion within a reasonable time after satisfaction of the judgment, rather than before satisfaction of the judgment as provided in section 685.080. If the motion must be made before the judgment is fully satisfied, he argues, plaintiffs will be unable to recover the full amounts of costs and fees due them if the judgment debtor "rushes to pay [the judgment]

15

before the prevailing party can move for attorney fees for enforcement." That result, plaintiff maintains, would frustrate the intent of fee-shifting statutes such as Welfare and Institutions Code section 15657.5 to relieve plaintiffs with certain types of meritorious cases of the disincentive created by litigation costs and attorney fees.[10]

Plaintiff's argument is premised on a misapprehension as to the effect of section 685.080's time limit. A judgment creditor who has yet to file a memorandum of costs (§ 685.070) or cost motion (§ 685.080) is not generally at the mercy of the judgment debtor as to the timing of satisfaction. If the tendered payment is by uncertified check, as it was in this case, the creditor may postpone presenting the check for payment and, in the meantime, file his or her cost memorandum or motion. (See § 724.010, subd. (c) [obligation to acknowledge satisfaction of judgment arises only when check is presented and honored]; *Hale v. Bohannon* (1952) 38 Cal.2d 458, 467 [the mere giving of a check does not constitute payment].) Even if payment is by certified check or similar instrument, the *acceptance* of which arguably constitutes satisfaction (see Cal. U. Com. Code, § 3310, subd. (a)), the judgment creditor retains, at the least, the option of rejecting the certified check and filing the motion or memorandum for enforcement costs and fees.

---

**10**   Welfare and Institutions Code section 15657.5 and related fees provisions were intended "to enable interested persons to engage attorneys to take up the cause of abused elderly persons and dependent adults." (Welf. & Inst. Code, § 15600, subd. (j); see also Sen. Com. on Public Safety, Analysis of Assem. Bill No. 2611 (2003–2004 Reg. Sess.) as amended June 16, 2004, p. I [bill adding Welf. & Inst. Code, § 15657.5 would "help elders get their homes and other assets back"].)

Conceivably, a judgment debtor could satisfy the judgment by tendering cash for the full outstanding amount, with interest, before the creditor has sought his or her enforcement costs and fees, though this is likely to be a rarity for sizeable judgments. If the creditor has reason to believe cash may imminently be tendered to pay the judgment, prudence counsels filing a motion or memorandum for the costs and fees accumulated to that point; if the judgment is not then satisfied, any costs or fees accruing later may be sought in a supplemental motion or memorandum. In any event, the possibility that some wily judgment debtor may make a cash payment timed to foreclose a final motion for costs and fees does not provide this court authorization to ignore the explicit, unambiguous language of section 685.080 and substitute a "reasonable time" rule of our own invention.

Moreover, section 685.080's time limit serves a policy purpose of its own, to prevent unfair surprise to the judgment debtor. "[T]he statutory purpose of requiring that the motion for enforcement costs be brought 'before the judgment is satisfied in full' (§ 685.080, subd. (a)) is to avoid a situation where a judgment debtor has paid off the entirety of what he [justifiably] believes to be his obligation in the entire case, only to be confronted later with a motion for yet more fees." (*Lucky United Properties Investment, Inc. v. Lee*, *supra*, 185 Cal.App.4th at p. 144.) Under sections 685.070 and 685.080, the judgment creditor cannot accept a payment as full satisfaction of the judgment, then file a memorandum or motion for additional enforcement costs and fees.

The record here shows that plaintiff did exactly that. By a letter of June 30, 2011, defendant's attorney reiterated his previous request to plaintiff's attorney for the "pay-off amount of the judgment" and enclosed a check for his estimate of that amount. On July 8, 2011, plaintiff's attorney informed defendant's attorney by letter that the amount received was inadequate to constitute "payment in full" because it omitted accrued interest on part of the judgment. The amount of

17

interest owing, according to the letter, was $18,529.40. By a second letter of the same date, plaintiff's counsel recalculated the amount due as $17,137.09. The second letter closed: "If you are in agreement, please forward a check to this office made payable to Fessha Taye and his counsel, Burnham Brown." On July 14, 2011, defendant's attorney sent a check for $17,137.09 and asked plaintiff's attorney to acknowledge satisfaction of the judgment as soon as possible. As noted earlier, that check was presented and honored the next day.

That plaintiff apparently never provided the requested acknowledgment of satisfaction of the judgment does not matter. The correspondence summarized above shows plaintiff's counsel was prepared to accept a final payment of $17,137.09 as full satisfaction of the judgment. Once defendant's check for that amount was honored, the judgment was fully satisfied, whether or not plaintiff later acknowledged it. (§ 724.010, subds. (a), (c).)[11] Plaintiff's motion to collect his costs of enforcing the judgment, filed 10 days later, was untimely under section 685.080, subdivision (a).

## CONCLUSION

Plaintiff's motion for costs and fees was timely as to attorney fees incurred opposing defendant's *appeal* from the judgment, but untimely as to fees incurred *enforcing* the judgment through the separate fraudulent transfer action. The lower courts and parties have not addressed the numerical division of fees into these categories, and we express no view on the subject. Nor do we address the question, which the Court of Appeal did not reach, of whether the amount of fees awarded for opposing the appeal was unreasonable. Finally, we leave for

---

[11]   Defendant could have forced acknowledgement, or obtained a court order of satisfaction, through the procedures in section 724.050.

18

resolution in the Court of Appeal plaintiff's request for costs and attorney fees incurred in this appeal.

**Disposition**

The judgment of the Court of Appeal is affirmed in part and reversed in part and the matter is remanded to that court for further proceedings consistent with this opinion.

**WERDEGAR, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**BAXTER, J.**
**CHIN, J.**
**CORRIGAN, J.**
**LIU, J.**
**POOCHIGIAN, J.**[*]

---

[*] Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Conservatorship of the Estate of McQueen

_____

**Unpublished Opinion** XXX NP opn. filed 2/7/13 – 1st Dist., Div. 4
**Original Appeal**
**Original Proceeding**
**Review Granted**
**Rehearing Granted**

_____

**Opinion No.** S209376
**Date Filed:** July 7, 2014

_____

**Court:** Superior
**County:** Alameda
**Judge:** Jo-Lynne Lee

_____

**Counsel:**

James E. Reed and Brooke Veres Reed for Defendant and Appellant.

Law Offices of Daniel D. Murphy, Daniel D. Murphy; Law Office of Audra Ibarra and Audra Ibarra for Plaintiff and Respondent.

Richard M. Pearl for California Rural Legal Assistance, Inc., California Rural Legal Assistance Foundation, The Impact Fund, The Legal Aid Association of California, The Legal Aid Society-Employment Law Center and The Western Center on Law and Poverty as Amici Curiae on behalf of Plaintiff and Respondent.

Jan T. Chilton, Jay-Allen Eisen, Dennis A. Fischer, Lisa R. Jaskol, Robin B. Johansen, Wendy Cole Lascher, Robin Meadow; Arnold & Porter and Steven L. Mayer for the California Academy of Appellate Lawyers as Amicus Curiae on behalf of Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

James E. Reed
3433 Golden Gate Way, Suite C
Lafayette, CA  94549
(925) 299-7893

Daniel D. Murphy
819 Eddy Street, Stadtmuller House
San Francisco, CA  94109-7701
(415) 771-6174

Richard M. Pearl
1816 Fifth Street
Berkeley, CA  94710
(510) 649-0810