Filed 5/17/22  P. v. Ortega CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. EDWARD ORTEGA, Defendant and Appellant. | B312372 (Los Angeles County Super. Ct. No. VA113572-02) |

APPEAL from a postjudgment order of the Superior Court of Los Angeles County, Lillian Vega Jacobs, Judge.  Affirmed.

John Steinberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Idan Ivri and Rene Judkiewicz, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

Edward Ortega, convicted of first degree murder in 2011 along with his codefendant Dennis Flores, appeals the superior court's denial of his petition for resentencing pursuant to Penal Code section 1170.95[1] after determining Ortega had failed to make a prima facie showing he was entitled to relief. Because Ortega's jury was not instructed on either the felony-murder rule or the natural and probable consequences doctrine, the jury's finding of premeditation necessarily means it concluded he had acted with express malice when committing the crime, making Ortega ineligible for resentencing under section 1170.95 as a matter of law. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Ortega's Conviction for First Degree Murder*

Ortega and Flores were charged in an information filed June 23, 2010 with the murder of Erick Roche, Jr. (§ 187, subd. (a)), with special firearm-use (§ 12022.53, subds. (b), (c), (d), (e)(1)) and criminal street gang (§ 186.22, subd. (b)) enhancement allegations. Ortega and Flores were jointly tried before separate juries.[2]

The People's evidence at trial established that Felicia Cleaver was driving her car with Guadalupe Adame and Flores on the night of November 19, 2009 when they saw Roche. Asked by Flores where Roche was from (meaning what was his gang affiliation), Adame, who knew Roche from high school, said he was from a tagging crew associated with the Pico Nuevo criminal

---

[1]    Statutory references are to this code.

[2]    Flores's jury, but not Ortega's, heard Flores's audiotaped statements to police officers concerning the crime. Flores identified Ortega as the shooter.

2

street gang.  She did not know if he had been admitted to Pico Nuevo.

After picking up Ortega, Cleaver and her passengers again saw Roche.  Cleaver testified that Flores told her to stop the car, let him and Ortega out and return in a few minutes.  Cleaver had heard someone from the rear seats, where Ortega and Flores were sitting, say, "We're going to hit him up."  When the men returned to the car, Flores was holding a gun.  One of the men said, "We got him."

Adame testified Cleaver had stopped the car near an alley.  She saw Flores and Ortega chase Roche into the alley, heard the word "Peanut" (a derogatory term for the Pico Nuevo gang) and two gunshots.  When Ortega and Flores returned to the car, Flores said they had "hit up" Roche, who had said "he wasn't from nowhere."

Two neighbors testified they heard two gunshots and saw two young men run from the alley to a car waiting nearby.

Roche's body was found in an alley in an area within the territory of the Pico Nuevo gang.  He died from gunshot wounds to the head.

The prosecution presented evidence that Rivera 13 and Pico Nuevo were rival gangs in the City of Pico Rivera with a long history of animosity, including numerous shootings.  The People's gang expert testified Flores was a member of Rivera 13 and, in his opinion, Ortega was an associate of the gang.

Ortega presented an alibi defense.  His girlfriend testified Ortega was with her all day and night on November 19, 2009.  In rebuttal a homicide detective testified the girlfriend had not given the alibi when she was interviewed in February 2010.  She first mentioned it in January 2011.

3

The trial court instructed the juries on murder using, in part, CALJIC Nos. 8.00 (Homicide—Defined), 8.10 (Murder—Defined), 8.11 ("Malice Aforethought"—Defined) and 8.20 (Deliberate and Premeditated Murder), as well as instructions on second degree murder and voluntary manslaughter. As pertinent to Ortega's current appeal, his jury was instructed pursuant to CALJIC 8.11 that "'Malice' may be either express or implied. [¶] Malice is express when there is manifested an intention unlawfully to kill a human being. [¶] Malice is implied when: [¶] 1. The killing resulted from an intentional act; [¶] 2. The natural consequences of the act are dangerous to human life; and [¶] 3. The act was deliberately performed with knowledge of the danger to, and with conscious disregard for, human life." The jury was also instructed, pursuant to CALJIC No. 8.20, "All murder which is perpetrated by any kind of willful, deliberate and premeditated killing with express malice aforethought is murder of the first degree," with the court defining the terms "willful," "deliberate" and "premeditated."

With respect to accomplice liability, in addition to CALJIC Nos. 3.00, 3.01 and 3.10, defining "principal," "aiding and abetting," and "accomplice," the court instructed pursuant to CALJIC No. 3.14 that "[m]erely assenting to or aiding or assisting in the commission of a crime without knowledge of the unlawful purpose of the perpetrator and without the intent or purpose of committing, encouraging or facilitating the commission of the crime is not criminal." There were no instructions on the felony-murder rule (e.g., CALJIC Nos. 8.21, 8.27) or the natural and probable consequences doctrine (e.g., CALJIC No. 3.02).

4

Ortega and Flores were both convicted of first degree premeditated murder with true findings that the murder had been committed for the benefit of a criminal street gang. Ortega's jury found true the allegation a principal had personally used and intentionally discharged a firearm causing death. Flores's jury found not true the allegation he had personally used and intentionally discharged a firearm causing death, but found true that a principal had used a firearm in that manner. Each man was sentenced to an aggregate indeterminate state prison term of 50 years to life. We affirmed the judgments on appeal. (*People v. Ortega* (Oct. 3, 2012, B231422) [nonpub. opn.]; *People v. Flores* (Oct. 3, 2012, B234019 ) [nonpub. opn.].)

2. *Ortega's Petition for Resentencing*

In March 2019 Ortega, representing himself, filed a petition for resentencing pursuant to section 1170.95. Ortega checked boxes on the printed form petition to establish his eligibility for resentencing relief, including the boxes stating he had been convicted of first or second degree murder pursuant to the felony-murder rule or the natural and probable consequences doctrine and could not now be convicted of first or second degree murder because of changes made to sections 188 and 189 by Senate Bill No. 1437 (Stats. 2018, ch. 1015) (Senate Bill 1437).

The court granted Ortega's request for appointment of counsel. The prosecutor filed a memorandum opposing the petition on constitutional grounds. Ortega's appointed counsel filed reply memoranda addressing the constitutionality of Senate Bill 1437 and arguing the petition established a prima facie case for relief requiring the court to issue an order to show cause and hold an evidentiary hearing on Ortega's request to be resentenced even though no felony-murder or "independent natural and

5

probable consequence" instruction had been given at Ortega's trial.

At a hearing on April 12, 2021 to determine whether Ortega had made a prima facie case for relief, the court confirmed the People had withdrawn their opposition to the petition on constitutional grounds. The court then described its understanding of the case "having reviewed the record of conviction." The court indicated its tentative ruling was to find that Ortega had not made a prima facie showing because Ortega, not Flores, shot Roche and also because Ortega's jury had not been instructed on the felony-murder rule or the natural and probable consequences doctrine.

After hearing argument of counsel, the superior court denied the petition. Explaining its ruling, the court stated, "And the facts as I read them [earlier in the hearing] come straight out of the appellate opinion where the appellate opinion indicates that they deemed Ortega to be the shooter. But in any event, as I indicated, those instructions that [Ortega's counsel] indicated were not given to the jury, they were not instructed on felony murder and they were not instructed under the natural and probable consequences doctrine. So I am going to deem that a prima facie showing has not been made showing that petitioner is entitled to relief for the reasons I indicated."

Ortega filed a timely notice of appeal.

## DISCUSSION

1. *Senate Bill 1437 and the Section 1170.95 Petition Procedure*

Senate Bill 1437 substantially modified the law relating to accomplice liability for murder, eliminating the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder (*People v. Gentile* (2020) 10 Cal.5th 830, 842-843 (*Gentile*)) and significantly narrowing the felony-murder exception to the malice requirement for murder. (§§ 188, subd. (a)(3), 189, subd. (e); see *People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*).) It also authorized, through new section 1170.95, an individual convicted of felony murder or murder based on the natural and probable consequences doctrine to petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if he or she could not have been convicted of murder because of Senate Bill 1437's changes to the definition of the crime. (See *Lewis*, at p. 957; *Gentile*, at p. 843.)

As amended by Senate Bill No. 775 (Stats. 2021, ch. 551, § 2) (Senate Bill 775), effective January 1, 2022, the ameliorative provisions of Senate Bill 1437 now also apply to attempted murder and voluntary manslaughter. Section 1170.95, subdivision (a), as amended, provides, "A person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed on a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine or manslaughter" may file a petition to have that sentence recalled and to be resentenced on any remaining counts if the other conditions of section 1170.95 apply.

7

If the section 1170.95 petition contains all the required information, including a declaration by the petitioner that he or she is eligible for relief (§ 1170.95, subd. (b)(1)(A)), the court must appoint counsel to represent the petitioner, if requested (§ 1170.95, subd. (b)(3)), and direct the prosecutor to file a response to the petition, permit the petitioner to file a reply and determine if the petitioner has made a prima facie showing that he or she is entitled to relief. (§ 1170.95, subd. (c); see *Lewis*, *supra*, 11 Cal.5th at pp. 962-963.)

In determining whether the petitioner has carried the burden of making the requisite prima facie showing he or she falls within the provisions of section 1170.95 and is entitled to relief, the superior court properly examines the record of conviction, "allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Lewis*, *supra*, 11 Cal.5th at p. 971.) However, "the prima facie inquiry under subdivision (c) is limited. Like the analogous prima facie inquiry in habeas corpus proceedings, the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause. . . . However, if the record, including the court's own documents, contain[s] facts refuting the allegations made in the petition, then the court is justified in making a credibility determination adverse to the petitioner." (*Id*. at pp. 970-971, internal quotation marks omitted.)

If the section 1170.95, subdivision (c), prima facie showing has been made, the court must issue an order to show cause and hold an evidentiary hearing to determine whether to vacate the murder conviction and resentence the petitioner on any

8

remaining counts. (§ 1170.95, subd. (d)(1).) At the hearing the prosecution has the burden of proving beyond a reasonable doubt that the petitioner is ineligible for resentencing. (§ 1170.95, subd. (d)(3).) The prosecutor and petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens. (See *Gentile*, *supra*, 10 Cal.5th at pp. 853-854.)

2. *Ortega Is Ineligible for Resentencing Relief as a Matter of Law*

To reiterate, section 1170.95 permits resentencing relief for individuals found guilty of murder only if they were convicted of felony murder, murder under the natural and probable consequences doctrine "or other theory under which malice is imputed to a person based solely on the person's participation in a crime." Here, the record of conviction, properly considered to determine whether Ortega made a prima facie showing he is entitled to resentencing relief, as held in *Lewis*, *supra*, 11 Cal.5th at page 971, established that Ortega was neither tried nor convicted under any of those now-invalid theories of accomplice liability. Based on the instructions given and the guilty verdict on first degree, premeditated murder, the jury necessarily found that Ortega, whether the shooter or a direct aider and abettor, acted with express malice. Malice was not imputed to him. As such, he was ineligible for resentencing relief as a matter of law, and his petition for resentencing was properly denied without issuance of an order to show cause.

Without disputing that neither a felony-murder nor a natural and probable consequences instruction was given at his trial, Ortega nonetheless insists the superior court erred in finding he failed to make a prima facie showing of entitlement to

9

resentencing relief, arguing that, in ruling he was Roche's actual killer, the superior court improperly relied on the factual summary in our opinion affirming Ortega's conviction and engaged in impermissible factfinding at the prima facie stage of the section 1170.95 process.  The Supreme Court in *Lewis* not only said it was proper at the prima facie stage for the superior court to look at the record of conviction in determining whether a petitioner has carried the burden of making a prima facie showing he or she falls within the provisions of section 1170.95 (*Lewis, supra*, 11 Cal.5th at p. 971) but also observed that appellate opinions "are generally considered to be part of the record of conviction."  (*Id.* at p. 972.)  Ortega, however, contends Senate Bill 775's amendments to section 1170.95 now preclude any reliance on factual summaries in a prior appellate decision affirming the murder conviction.

Among its other changes to section 1170.95, Senate Bill 775 expanded subdivision (d)(3)'s language concerning the conduct of the hearing to determine whether the petitioner is entitled to relief after issuance of an order to show cause.  Section 1170.95, subdivision (d)(3), now provides, in part, "The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed.  The court may also consider the procedural history of the case recited in any prior appellate opinion."

Ortega contends that, by expressly allowing the superior court at the evidentiary hearing to consider the appellate opinion's description of the procedural history of the case, Senate Bill 775 implicitly prohibited the consideration of the appellate

court's factual summary of the case. He additionally contends that, although this provision regarding use of a prior appellate opinion is in subdivision (d)(3) detailing evidentiary requirements at the hearing after issuance of an order to show cause, given Senate Bill 775's purpose of expanding the rights of petitioners, we should infer the Legislature also intended the same limitation be applied to a determination under subdivision (c) concerning the petitioner's required prima facie showing. "If the Legislature had intended to allow the trial court to use hearsay in the prior record on appeal, including the factual summary of the prior opinion, at the prima facie stage," Ortega insists, "it would have clearly so stated."

The Attorney General disagrees with both aspects of Ortega's subdivision (d)(3) argument. The language at issue expressly authorizing use of the procedural history of the case as recited in a prior appellate opinion, the Attorney General argues, does not impliedly prohibit use of other portions of the opinion, including the factual summary, provided they meet the express evidentiary requirements of subdivision (d)(3). And even if there were an implied prohibition, it would apply only at the evidentiary hearing following issuance of an order to show cause, not at the prima facie stage, where such use was authorized by *Lewis*.

Because we affirm the superior court's order based on the jury's necessary finding that Ortega had acted with express malice, not the court's reliance on our opinion on direct appeal, we defer to another day expressing any view on these issues.[3]

---

[3] As the Attorney General correctly explains, whether the superior court erred in determining Ortega was Roche's actual killer based on its reading of our prior opinion is immaterial

11

(See generally *People v. Clements* (2022) 75 Cal.App.5th 276, 292 [the "specificity" of Senate Bill 775's amendment of section 1170.95, subdivision (d)(3), "indicates the Legislature has decided trial judges should not rely on the factual summaries contained in prior appellate decisions when a section 1170.95 petition reaches the stage of a full-fledged evidentiary hearing"].)

Ortega next argues the court's instruction on implied malice with CALJIC No. 8.11 was equivalent to a natural and probable consequences instruction and permitted the jury to convict him on a now-prohibited theory of imputed malice. This argument is doubly flawed. First, Ortega is incorrect that an aspect of the definition of implied malice—the killing resulted from an intentional act, the natural and probable consequences of which were dangerous to human life[4]—is the equivalent of a

---

because the court's second reason for ruling Ortega had failed to make the required prima facie showing—there were no felony-murder or natural and probable consequences instructions, and Ortega could not have been convicted on a now-invalid theory of imputed malice—is sufficient to affirm the order denying Ortega's petition. (See *Conservatorship of McQueen* (2014) 59 Cal.4th 602, 612 ["a trial court's order will ordinarily be upheld if it is legally correct on any basis"]; *People v. Smithey* (1999) 20 Cal.4th 936, 972 ["[A] ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason. If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion"; internal quotation marks omitted].)

[4] As defined by CALJIC No. 8.11, the act must also be deliberately performed with knowledge of its danger to, and conscious disregard for, human life. (See also CALCRIM No. 520.)

natural and probable consequences instruction within the meaning of Senate Bills 1437 and 775.  As we held in *People v. Mancilla* (2021) 67 Cal.App.5th 854, a case involving a finding of implied malice as an element of provocative act murder, "'[M]urder includes both actus reus and mens rea elements.  To satisfy the actus reus element of murder, the act of either the defendant or *an accomplice* must be the proximate cause of death.'  Consideration of the natural and probable consequence of the defendant's conduct in the context of provocative murder, as with any case of implied malice murder, relates to proximate cause—that is to the actus reus element of the crime, not the mens rea element that was the focus of Senate Bill 1437." (*Id.* at p. 868, fn. omitted.)  A finding of implied malice murder does not involve a now-prohibited imputation of malice.  (See *Gentile*, *supra*, 10 Cal.5th at p. 850 ["notwithstanding Senate Bill 1437's elimination of natural and probable consequences liability for second degree murder, an aider and abettor who does not expressly intend to aid a killing can still be convicted of second degree murder if the person knows that his or her conduct endangers the life of another and acts with conscious disregard for life"].)

Second, as discussed, by finding him guilty of first degree, premeditated murder, Ortega's jury necessarily found Ortega had acted with express, not implied, malice during the fatal shooting of Roche, whether he was the actual killer or a direct aider and abettor.  The petition for resentencing was properly denied at the prima facie stage.

## DISPOSITION

The postjudgment order denying Ortega's petition for resentencing is affirmed.


PERLUSS, P. J.


We concur:



SEGAL, J.



FEUER, J.