[No. A015062. First Dist., Div. Three. July 31, 1985.]

L. T. WALLACE, as Director, etc.,
Plaintiff, Cross-defendant and Appellant, v.
CONSUMERS COOPERATIVE OF BERKELEY, INC.,
Defendant, Cross-complainant and Respondent;
CONSUMERS UNION OF THE UNITED STATES,
Intervener, Cross-complainant and Respondent.

**COUNSEL**

John K. Van de Kamp, Attorney General, Robert H. Connett, Assistant Attorney General, Walter E. Wunderlich and Mark J. Urban, Deputy Attorneys General, for Plaintiff, Cross-defendant and Appellant.

Sidney M. Wolinsky, Lois Salisbury, Fred H. Altshuler, Altshuler & Berzon and Harry Snyder for Defendant, Cross-complainant and Respondent and for Intervener, Cross-complainant and Respondent.

## Opinion

**SCOTT, J.**—The Director of the Department of Food and Agriculture of the State of California (the Director) appeals from an order awarding attorney's fees pursuant to Code of Civil Procedure section 1021.5[1] to respondents as the successful parties in litigation which challenged the validity of mandatory minimum retail milk prices in the state. Respondents are the Consumers Cooperative of Berkeley, a California corporation, and the Consumers Union of the United States, a nonprofit membership organization.

I

In the late 1930's the Legislature enacted the Milk Stabilization Act, which authorized the Director to set minimum prices for milk at the producer, wholesale, and retail levels. (See *Jersey Maid Milk Products Co.* v. *Brock* (1939) 13 Cal.2d 620, 626-632 [91 P.2d 577].) The purpose of the act was to stabilize milk production and provide an adequate milk supply at reasonable prices to consumers. (See *In re Willing* (1939) 12 Cal.2d 591, 594 [86 P.2d 663].)

Over a period of years, changes in milk production, marketing, and distribution undercut the original justifications for mandatory minimum wholesale prices, and in 1973 and 1974 minimum wholesale prices were suspended throughout most of the state.

In the early 1970's, various consumer groups and others began urging unsuccessfully that there was also no longer any need for mandatory minimum retail milk prices. During 1974 and 1975, respondent Consumers Cooperative of Berkeley, Inc. (Cooperative), a consumer-owned retail food chain, respondent Consumers Union (Union) and other consumer groups submitted several petitions requesting the Director to suspend the retail milk price regulations.

There was little response to these petitions. In April 1975, the Director did suspend minimum retail prices only in the Sacramento area; however,

---

[1]Unless otherwise indicated, all further California statutory references are to the Code of Civil Procedure.

despite requests by various groups, the department made no public comment regarding the effect of the experiment, and refused requests by these consumer groups to release a draft of a report documenting the positive impact and lack of adverse consequences of the suspension.

Early in 1976, Cooperative decided to challenge the legality of the minimum milk retail price regulations through litigation. On February 13, 1976, it began to sell milk at eight cents per half gallon below the minimum price then set for its marketing area. On February 15, the Director obtained a temporary restraining order prohibiting Cooperative from selling milk at prices below the minimums. On March 10, a preliminary injunction was issued; however, the court limited the effectiveness of the injunction to 120 days and stated that Cooperative had "made a colorable showing that it will prevail at a trial on the merits . . . ."

Cooperative and Union then filed a cross-complaint and a cross-complaint in intervention seeking an injunction against the continued enforcement of minimum retail milk price orders, and a declaration that the statewide minimum retail milk pricing program was unconstitutional. The Director demurred to both cross-complaints on various grounds; the demurrer was overruled except with respect to one cause of action.

The Director also filed a complaint pursuant to former Food and Agriculture Code section 62642 against Cooperative, seeking civil penalties of $19,000.

Respondents commenced discovery. During a deposition in July 1976, the Director stated that he had never considered that the suspension of retail milk prices in the state was warranted. He also testified that while suspension of milk prices on a statewide basis was an "ongoing viable alternative in an analytical sense," he was not giving the matter specific consideration at that time.

In August 1976, however, L. R. Walker, chief of the department's Bureau of Milk Stabilization and Bureau of Milk Marketing Enforcement testified during a deposition that the department was considering holding hearings on retail price suspension.

The parties then entered into settlement negotiations. Two weeks before the September 1976 trial date, the parties agreed to a memorandum of understanding as follows. The trial date would be continued to November 15, 1976. If the Director failed to notice formal public hearings on the statewide suspension of minimum retail milk prices by that date, the action would be

tried. If the Director conducted hearings and suspended minimum prices by January 1, 1977, respondents would drop their challenges to the statutory and administrative procedures as moot. In addition, pursuant to a separate agreement, the Director's "companion action" for civil penalties was to be dismissed, with Cooperative remitting a payment of $500 to the Director.

In November, the Director issued notice of hearings. During November and December, respondents, among others, appeared at various administrative hearings, presenting testimony in favor of suspension. On December 30, 1976, the Director issued orders suspending minimum retail milk price regulations throughout the state.

On March 14, 1977, respondents moved for an award of attorney's fees on the ground that they were the prevailing parties in this litigation. The trial court concluded, inter alia, that the action "set in motion the machinery by which milk prices ultimately were suspended," and that respondents were entitled to fees.[2] After an additional hearing, the court awarded fees in an amount in excess of $200,000. The award included compensation for services rendered in the civil penalty action and at the suspension hearings.

## II

First, the Director contends that the trial court erred in overruling its demurrers to the cross-complaint and cross-complaint in intervention. The Director reasons that the overruling of the demurrers was "erroneous and prejudicial since it allowed the lower court to retain jurisdiction in the matter and ultimately make the award of attorney's fees."

To overcome respondents' argument that the rulings on the demurrer are not cognizable in this appeal, the Director relies in part on the rule that although an order overruling a demurrer is nonappealable, it is reviewable on appeal from the final judgment entered in the action. (See, e.g., *Miller v. Pacific Constructors, Inc.* (1945) 68 Cal.App.2d 529, 538-544 [157 P.2d 57].) However, this action was resolved not by a trial on the merits resulting in a final judgment, but by a memorandum of understanding which led to the action being dropped from the court's calendar. In effect, the merits of this case were disposed of by a compromise agreement. ■ "'[A] valid compromise agreement has many attributes of a judgment, . . . and is de-

---

[2]Initially, the court awarded fees pursuant to the substantial benefit doctrine. Subsequently, it concluded that respondents were also entitled to fees pursuant to section 1021.5 which became effective January 1, 1978. (See *Woodland Hills Residents Assn., Inc.* v. *City Council* (1979) 23 Cal.3d 917, 928-932 [154 Cal.Rptr. 503, 593 P.2d 200] [§ 1021.5 applicable to actions pending on appeal on its effective date].)

cisive of the rights of the parties thereto and operates as a bar to the re-opening of the original controversy.' [Citation.]" *(Folsom v. Butte County Assn. of Governments* (1982) 32 Cal.3d 668, 677 [186 Cal.Rptr. 589, 652 P.2d 437].)

Relying on *Nadeau v. Helgemoe* (1st Cir. 1978) 581 F.2d 275, the Director also argues that an evaluation of the court's order on the demurrers is necessary to determine whether respondents were successful parties within the meaning of section 1021.5.

In *Folsom v. Butte County Assn. of Governments, supra,* 32 Cal.3d 668, the Supreme Court held that a litigant settling a lawsuit may be a successful party within the meaning of section 1021.5 if the underlying action contributed substantially to remedying conditions at which that action was directed. *(Id.,* at p. 671.) In its analysis of the issue, the court considered the focus of federal courts[3] construing the term "prevailing party" under the Civil Rights Attorney's Fees Awards Act, in which "the inquiry as to a party's success must be a pragmatic one that may range outside the merits of the underlying dispute. 'It's [*sic*] initial focus might well be on establishing the precise factual/legal condition that the fee claimant has sought to change or affect . . . . With this condition taken as a benchmark, inquiry may then turn to whether as a quite practical matter the outcome, in whatever form it is realized, is one to which the plaintiff fee claimant's efforts contributed in a significant way, and which does involve an actual conferral of benefit or relief from burden when measured against the benchmark condition.' *(Bonnes v. Long* (4th Cir. 1979) 599 F.2d 1316, 1319; accord, *Chicano Police Officer's Ass'n* [v. *Stover* (10th Cir. 1980)] 624 F.2d [127,] 131; *Nadeau v. Helgemoe* (1st Cir. 1978) 581 F.2d 275, 278; *F & M Schaefer Corp. v. C. Schmidt & Sons, Inc.* (S.D.N.Y. 1979) 476 F.Supp. 203, 206-207.)" *(Id.,* at p. 685, fn. omitted.)

It should be noted, however, that the cases which the Supreme Court cites, *Bonnes v. Long* (4th Cir. 1979) 599 F.2d 1316 and *Nadeau v. Helgemoe, supra,* 581 F.2d 275, actually illustrate a lack of accord among the federal circuits concerning the appropriate test for determining the "prevailing party" issue. (See *Johnston v. Jago* (6th Cir. 1982) 691 F.2d 283, 285-286; see also *Kenley, Commissioner, Department of Health of Virginia, et al. v. Young* (1982) 455 U.S. 961 [71 L.Ed.2d 681, 102 S.Ct. 1476] (dis. opn. of Rehnquist, J., from denial of cert.).) The test articulated in

---

[3]Because the Legislature relied heavily on federal precedent when enacting section 1021.5, California courts frequently look to federal decisions when interpreting that section. *(Westside Community for Independent Living, Inc. v. Obledo* (1983) 33 Cal.3d 348, 352, fn. 5 [188 Cal.Rptr. 873, 657 P.2d 365].)

*Bonnes* focuses only on the factual question of whether the lawsuit caused a change favorable to the plaintiff. (*Bonnes* v. *Long, supra,* 599 F.2d at p. 1319.) In contrast, in *Nadeau,* the court proclaimed a two-pronged test. First, a plaintiff must demonstrate that the lawsuit was causally related to securing the relief obtained. Second, plaintiff must establish some minimum basis in law for the relief secured. "[I]f it has been judicially determined that defendants' conduct, however beneficial it may be to plaintiffs' interests, is not required by law, then defendants must be held to have acted gratuitously and plaintiffs have not prevailed in a legal sense." (*Nadeau* v. *Helgemoe, supra,* 599 F.2d at p. 281.) Recognizing the difficulty of applying this test in cases which had been settled, the court emphasized that the inquiry did not involve a trial on the merits, but required only that the trial court determine that plaintiffs' claim was not " 'frivolous, unreasonable, or groundless.' " (*Ibid.;* see also *Harrington* v. *DeVito* (7th Cir. 1981) 656 F.2d 264, 266-268.)

We need not decide in this case whether our Supreme Court has impliedly rejected the applicability of the second prong of the *Nadeau* test in this state. Even if that test were applicable, it would not require this court to analyze each of appellant's contentions with respect to the overruling of the demurrers. The trial court unquestionably concluded that respondents' claims were not frivolous or groundless when it granted only a limited preliminary injunction, expressly noting that respondents had made a colorable showing that they would prevail at a trial on the merits of the case.[4] We are also satisfied that the litigation was not frivolous or groundless.

## III

Next, the Director contends the trial court erred when it concluded that there was a causal connection between this action and the suspension of retail milk prices.

 In order to justify a fee award, there must be a causal connection between the lawsuit and the relief obtained. (*Westside Community for Independent Living, Inc.* v. *Obledo, supra,* 33 Cal.3d at p. 353.) Courts have used varying terminology to describe that connection. For example, fees are appropriate when an action was the "catalyst" motivating defendants to provide the relief sought, or when it "activated" defendants to modify their behavior. (*Ibid.*) In *Folsom* v. *Butte County Assn. of Governments, supra,*

---

[4]While the court made that statement before the cross-complaints were actually filed, respondents had filed a lengthy memorandum in opposition to the order to show cause re preliminary injunction, in which their arguments were similar to the allegations of their cross-complaint, filed shortly thereafter.

32 Cal.3d 668, the court framed the question as whether plaintiffs' action "substantially contributed" to the result achieved. (*Id.,* at p. 686.)

In general, whether plaintiffs have met the statutory requirements for an award of fees pursuant to section 1021.5 is a matter for the discretion of the trial court. (See *Press* v. *Lucky Stores, Inc.* (1983) 34 Cal.3d 311, 317-321 [193 Cal.Rptr. 900, 667 P.2d 704].) Federal cases state that the question of whether plaintiffs' action is causally linked to the achievement of the relief obtained is one of fact. (See, e.g., *Harrington* v. *DeVito, supra,* 656 F.2d 264, 266-267.) If there is any reasonable basis in the record to support the trial court's determination of causation, that determination is entitled to deference by the appellate court. (See *Westside Community for Independent Living, Inc., supra,* 33 Cal.3d at pp. 354-355.)

Appellant first attacks the court's causation determination on the ground that the only evidence upon which the court relied was the statements in the declarations of L. R. Walker and Lawrence Shepard that they believed the litigation was the catalyst in bringing about the suspension of prices; appellant contends that those statements were inadmissible, either as hearsay or for lack of personal knowledge of the declarant.

■ It is true that an affidavit made on information and belief is hearsay and not proof of the facts stated therein. (*Jeffers* v. *Screen Extras Guild, Inc.* (1955) 134 Cal.App.2d 622, 623 [286 P.2d 30].) However, appellant reads the court's memorandum of decision too narrowly. It is apparent that the court considered all the evidence before it at the hearing on respondents' entitlement to attorney's fees, not just the two isolated statements specifically mentioned in its memorandum of decision. ■ From the chronology of events set forth in all the declarations, the trial court could reasonably have concluded that the litigation "substantially contributed to" or was "demonstrably influential" in the Director's decision to call hearings to consider the suspension of minimum retail prices on a statewide basis.

Appellant also argues that the trial court's causation determination is contrary to "emerging legal policies" which dictate that courts should be cautious in awarding fees when the action at issue has led to a quasi-legislative change. Despite appellant's policy arguments, it is settled that fees may be awarded when there is a causal connection between a plaintiff's action and the result sought, even if that result comes about through legislative action. (See, e.g., *Folsom* v. *Butte County Assn. of Governments, supra,* 32 Cal.3d at pp. 686-687; *State of California* v. *County of Santa Clara* (1983) 142 Cal.App.3d 608 [191 Cal.Rptr. 204].) *Westside Community for Independent Living, Inc.* v. *Obledo, supra,* 33 Cal.3d 348, upon which appellant relies,

does not hold otherwise. In that case, the court reversed orders awarding attorney's fees because it found no reasonable basis in the record for the trial court's determination that there was a causal connection between plaintiffs' action and the final adoption of certain regulations, not because of the quasi-legislative nature of the proceedings leading to the promulgation of those regulations.

Finally, appellant suggests that the court's causation determination creates a conflict with the requirement that the Director's suspension decision must satisfy certain procedural and evidentiary requirements, and with the presumption that the Director met these requirements in making his decision. However, appellant's characterization of the trial court's determination is inaccurate. The trial court expressly rejected any contention that the ultimate decision to suspend was caused by threat of suit; rather it determined that the litigation set in motion the process which eventually resulted in the suspension.

## IV

Next, appellant contends that the trial court abused its discretion in determining the amount of the fees awarded. Appellant's primary objection is to the award of fees for services performed in conjunction with the administrative proceedings, on the ground that California law precludes a fee award in such proceedings. In addition, appellant objects to the award for services rendered in the civil penalty action, on the ground that it was a separate action in which respondents were unsuccessful. Finally, appellant objects to compensating Attorney Martilla at $60 per hour without distinguishing between time spent before and after her admission to the bar.

### A. FEES FOR SERVICES AT ADMINISTRATIVE HEARINGS

As has already been discussed, among the requirements of section 1021.5 is that the party to whom fees are awarded must be "successful." **(5)** It is settled, however, that a party need not prevail on every claim presented in an action in order to be considered a successful party within the meaning of the section. (See, e.g., *Ligon* v. *State Personnel Bd.* (1981) 123 Cal.App.3d 583 [176 Cal.Rptr. 717]; *Daniels* v. *McKinney* (1983) 146 Cal.App.3d 42, 54-56 [193 Cal.Rptr. 842]; *Guardians of Turlock's Integrity* v. *Turlock City Council* (1983) 149 Cal.App.3d 584, 600-602 [197 Cal.Rptr. 303], mod. 150 Cal.App.3d 1141c.) As we will discuss *infra,* when a plaintiff is successful within the meaning of the section, the fact that he or she has prevailed on some claims but not on others is a factor to be

considered in determining the amount of the fee awarded. (See *Hensley* v. *Eckerhart* (1983) 461 U.S. 424 [76 L.Ed.2d 40, 103 S.Ct. 1933].)

Once it has been determined that a party is successful and is otherwise entitled to fees under section 1021.5, the court must calculate the amount to be awarded. (See *Press* v. *Lucky Stores, Inc., supra,* 34 Cal.3d at pp. 322-323.) ■ The starting point of every award must be a calculation of the attorney's services in terms of the time expended on the case. (*Id.,* at p. 322.) When computing the time expended, the court should ordinarily consider only time reasonably spent on the merits of the action, and should not include peripheral activities *unless* they may be shown to have contributed to the result reached. (*Mandel* v. *Lackner* (1979) 92 Cal.App.3d 747, 761 [155 Cal.Rptr. 269]; see *Hensley* v. *Eckerhart, supra,* 461 U.S. at pp. 433-434 [76 L.Ed.2d at pp. 50-51] [trial court should include in initial fee calculation only hours "reasonably expended" on the litigation].)

Under federal law, the hours reasonably expended on an action may include services performed in closely related administrative proceedings. In *Chrapliwy* v. *Uniroyal, Inc.* (7th Cir. 1982) 670 F.2d 760, for example, plaintiffs brought a title VII action alleging employment discrimination, and were granted partial summary judgment on liability issues. The action was ultimately settled, but during a lengthy delay before settlement, plaintiffs pursued court and administrative proceedings in an effort to debar defendant from its federal contracts because of its discriminatory practices. The court held that plaintiffs' award of fees in the title VII action properly included compensation for services in the debarment proceedings. The court reasoned that those services contributed to the ultimate termination of the title VII action and in that sense were within that action. (*Id.,* at pp. 765-766.)

We recognize that while federal statutes authorize fees "in any action or proceeding" (see, e.g., 42 U.S.C. § 1988), California law more narrowly provides that fees may be awarded "in any action. . . ." ■ Relying on that difference and on *Consumer Lobby Against Monopolies* v. *Public Utilities Com.* (1979) 25 Cal.3d 891 [160 Cal.Rptr. 124, 603 P.2d 41], appellant urges that, unlike federal law, California law absolutely prohibits any award for services performed in administrative proceedings. We disagree.

First, a recent decision of the United States Supreme Court, *Webb* v. *Board of Education of Dyer County* (1985) — U.S. — [85 L.Ed.2d 233, 105 S.Ct. 1923] has undermined appellant's argument that the difference in statutory language is of critical significance.

In *Webb,* the court emphasized that under the Civil Rights Attorney's Fees Awards Act (42 U.S.C. § 1988), the determination of the hours "reasonably

expended" upon an action is a matter for the discretion of the trial court. (*Webb, supra,* at pp. —— [85 L.Ed.2d at pp. 241-242, 105 S.Ct. at pp. 1928-1929].) Section 1988 authorizes a fee to the prevailing party in "any action or proceeding" to enforce certain statutes, including 42 United States Code section 1983. At issue in *Webb* was the fee claim of a teacher who had prevailed in a section 1983 action challenging his termination, and who argued that his award should include fees for services performed on administrative proceedings before the local school board. First, the court held that because those proceedings were optional rather than a necessary prerequisite to the section 1983 action, they were not "proceeding[s] to enforce" that section within the meaning of section 1988. The court also rejected the teacher's alternative theory that the time spent on the administrative proceedings was time "reasonably expended" on the civil rights action itself, because he had made no showing that "any discrete portion of the work product from the administrative proceedings was work that was both useful and of a type ordinarily necessary to advance the civil rights litigation to the state it reached before settlement." (*Webb, supra,* at p. — [85 L.Ed.2d at p. 242, 105 S.Ct. at p. 1929].) While the Supreme Court held that the trial court did not abuse its discretion in denying the fees requested, the clear implication of its decision is that on a proper showing, the time "reasonably expended" on an action may include time spent on related administrative proceedings.

Furthermore, in *Consumer Lobby Against Monopolies* v. *Public Utilities Com., supra,* 25 Cal.3d 891, our Supreme Court held simply that the Public Utilities Commission may not award attorney's fees pursuant to section 1021.5 in rate-making proceedings, as the section only authorizes an award by a court in an action. (*Id.,* at p. 910.) Neither that narrow holding nor the language of section 1021.5 itself precluded the trial court from determining that the award of fees *in this action* should include compensation for services rendered in the administrative proceedings, on the ground that those proceedings were in effect part of this action because of the terms of the settlement agreement between the parties.

When the trial court included fees for the services rendered in conjunction with the administrative proceedings, it described those proceedings and this action as "intertwined inextricably." The court's description is accurate. According to the memorandum of understanding which settled this action for all practical purposes, respondents' promise to abandon their claims was contingent in part on the occurrence of those administrative hearings, and the fact that respondents would participate in the hearings was implicit in the agreement. Given the terms of the memorandum, it is also apparent that the legal services performed in those proceedings were both useful and

necessary to the ultimate resolution of the action, and directly contributed to that resolution. Under the circumstances, it was well within the range of the trial court's discretion to determine that the attorney time expended in the administrative hearings was in effect time "reasonably expended" in the action itself. The award was proper.[5]

## B. Fees for Civil Penalty Action

Appellant also argues that the fee award should not include time spent on the civil penalty action, because it was a separate action in which respondents did not prevail. We disagree. First, a trial court may, in its discretion, determine that time reasonably expended on an action includes time spent on other separate but closely related court proceedings. (See, e.g., *Bartholomew* v. *Watson* (9th Cir. 1982) 665 F.2d 910, 912-914 [in federal civil rights action, fees awarded for services rendered in state court action pursued as necessary preliminary to enforcement of federal action]; *Brown* v. *Bathke* (8th Cir. 1978) 588 F.2d 634, 638 [award of fees to prevailing party in civil rights action for work in related proceedings is matter within trial court's discretion].)

As for the principles applicable when a plaintiff has prevailed on some claims but not others, *Hensley* v. *Eckerhart, supra,* 461 U.S. 424 is instructive. The issue in that case was whether a plaintiff who was successful on only some claims raised in a civil rights action was entitled to recover fees for services on the unsuccessful claims. In such a case, the court explained, the threshold determination was whether plaintiff was a prevailing party, and plaintiffs may be considered prevailing " 'if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.' [Citation.]" (*Id.,* at p. 433 [76 L.Ed.2d at p. 50].)

Next, the court instructed, the trial court must determine what fee is reasonable. After multiplying hours reasonably expended times a reasonable

[5]We are aware that in *Beach Colony II* v. *California Coastal Com.* (1985) 166 Cal.App.3d 106 [212 Cal.Rptr. 485], the appellate court recently held that a plaintiff who had prevailed in an administrative mandamus action was not entitled to fees under section 1021.5 for expenses incurred during the litigation or at the administrative proceedings before the commission. With respect to the administrative proceedings before the commission the court focused on the absence of any reference in section 1021.5 to "proceedings" and stated somewhat ambiguously that at least the section was not meant to apply to nonjudicial aspects of an administrative proceeding. (*Id.,* at pp. 115-116.) *Beach Colony* is factually distinguishable from this case, which does not involve administrative proceedings preceding a mandamus action; instead, it involves attorney time spent on administrative proceedings which followed and resulted from the commencement of an action, and a determination that the attorney time spent in those proceedings was in effect time "reasonably expended" on the action itself because of the settlement agreement between the parties.

rate, the trial court may adjust that product upward or downward in light of the results obtained, among other factors. If plaintiff failed to prevail on claims unrelated to his successful claims, work on the unrelated claims cannot be deemed to be expended in pursuit of the ultimate successful result. In contrast, where a plaintiff's claims for relief involve a common core of facts or are based on related legal theories, the court should focus on the significance of the overall relief obtained in relation to the hours reasonably expended; where plaintiff has obtained "excellent results," his or her attorney should recover a fully compensatory fee. (*Id.*, at pp. 434-435 [76 L.Ed.2d at pp. 51-52].)

In light of the foregoing principles, we consider the award of fees for work on the civil penalty action. It is clear that fees were not inappropriate merely because the penalty action was technically a separate action. While that action was not a necessary prerequisite to this action, the two were closely related and involved identical issues. Notwithstanding respondents' agreement to pay $500 in return for the dismissal of the penalty action, it is apparent that respondents ultimately obtained the precise result which they sought in the instant action, i.e., the suspension of minimum retail milk prices statewide. Under the circumstances, we conclude that the trial court did not abuse its discretion when it determined that the award of fees in this action should include compensation for the work performed on the penalty action.

## C. Determination of Reasonable Hourly Rate

Finally, appellant objects to the court's finding that the 928 hours which Luana Martilla expended in this action were compensable at $60 per hour. Appellant contends that the trial court failed to distinguish between her services before admission to the bar and those thereafter.

When a party is entitled to attorney's fees under section 1021.5, the trial court must determine a "touchstone" or "lodestar" figure based on a "'careful compilation of the time spent and reasonable hourly compensation for each attorney . . . involved in the presentation of the case.' [Citations.]" (*Press* v. *Lucky Stores, Inc., supra,* 34 Cal.3d at pp. 321-322.) The court may then increase or reduce that figure by the application of a "multiplier," after considering other factors about the lawsuit. (*Id.*, at p. 322, and fn. 12.) The experienced trial judge is the best judge of the value of professional services rendered in his or her court. Provided that the court's determination of that value is based on the lodestar adjustment method, that determination will not be disturbed on appeal unless the ap-

pellate court is convinced that it is clearly wrong. (*Serrano* v. *Priest* (1977) 20 Cal.3d 25, 48-49 [141 Cal.Rptr. 315, 569 P.2d 1303].)

Ms. Martilla's declarations stated both when she commenced participation in this litigation, and when she passed the bar examination. The record also includes a declaration from an experienced trial lawyer stating that he had read Martilla's declarations and resume and concluded that $60 an hour was a reasonable fee for her services. Given that record, we must conclude that the trial court did consider when Martilla passed the bar in arriving at a total hourly value for her services. We note also that although respondents requested a trebling of the lodestar or touchstone figure, the trial court concluded that no enhancement was warranted.[6] We find no abuse of discretion in the court's fee determination.

V

Appellant contends and respondents concede that the judgment must be modified to eliminate provisions relating to enforcement of the award. The court's anticipation of possible collection problems was premature. (See *Committee to Defend Reproductive Rights* v. *Cory* (1982) 132 Cal.App.3d 852, 858-859 [183 Cal.Rptr. 475].)

The order appealed from is modified to delete those provisions which direct appellant and others to take steps to effectuate payment of the fee award from certain sources, which declare the fee award to be costs within the meaning of section 1028, and which declare funds appropriated for the operating expenses of the Department of Food and Agriculture to be funds appropriated within the meaning of section 1028. In all other respects, the order is affirmed.

White, P. J., and Merrill, J., concurred.

---

[6]Respondents were also awarded attorney's fees for their work on the fee issue itself; in making that award, the court diminished the touchstone figure by half.