Filed 11/21/19

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| HIGHLAND SPRINGS CONFERENCE AND TRAINING CENTER et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> CITY OF BANNING, <br><br> Defendant and Respondent; <br><br> SCC ACQUISITIONS, INC., et al., <br><br> Real Parties in Interest and Respondents. | E069248 <br><br> (Super.Ct.No. RIC460950) <br><br> OPINION |

APPEAL from the Superior Court of Riverside County. Thomas H. Cahraman, Judge. Reversed with directions.

Chatten-Brown, Carstens & Minteer, Joshua R. Chatten-Brown and Jan Chatten-Brown, for Plaintiff and Appellant Highland Springs Conference and Training Center.

Leibold McClendon & Mann and John G. McClendon for Plaintiff and Appellant Banning Bench Community of Interest Association.

1

Aleshire & Wynder and Anthony R. Taylor and Stephen R. Onstot for Defendant and Respondent.

Voss, Cook & Thel, Francis T. Donohue III; Bruce V. Cook and Andrew P. Cook for Real Parties in Interest and Respondents.

## I.  INTRODUCTION

Plaintiffs and appellants, Highland Springs Conference and Training Center (Highland Springs) and Banning Bench Community of Interest Association (Banning Bench), appeal from the August 3 and 4, 2017, orders limiting the attorney fees plaintiffs could recover from real parties in interest, SCC/Black Bench LLC (SCC/BB) and SCC Acquisitions, Inc. (SCCA).  In cost memoranda, and again in duplicative fee motions, plaintiffs sought to recover fees they incurred in successfully pursuing a motion to amend their October 2008 judgments against SCC/BB, to add SCCA to the October 2008 judgments as an additional judgment debtor.  We reverse and remand the matter to the court with directions to redetermine the amount of each plaintiff's fee award.

## II.  BACKGROUND[1]

In April 2008, a judgment was entered in favor of plaintiffs against defendant and respondent, City of Banning (the City), and SCC/BB, on plaintiffs' writ petitions challenging the City's certification of an environmental impact report for a development project known as the Black Bench project.  (*Highland Springs*, *supra*, 244 Cal.App.4th at

---

[1] Some of the facts relevant to this appeal are taken from this court's decision in a prior appeal in these consolidated actions, *Highland Springs Conference & Training Center v. City of Banning* (2016) 244 Cal.App.4th 267 (*Highland Springs*).

p. 272.) SCC/BB was the only named real party in interest in the writ petitions. In October 2008, the court awarded Highland Springs $421,819.96, and awarded Banning Bench $288,920.01, in costs and attorney fees against SCC/BB. (Code Civ. Proc., §§ 1032, 1033.5, 1021.5.)[2]

By the end of 2008, SCC/BB lost the Black Bench property in foreclosure and had exhausted around $14 million in capital. (*Highland Springs*, *supra*, 244 Cal.App.4th at pp. 272, 277.) SCC/BB appealed the April 2008 judgment, but its appeal was dismissed in September 2008 after it failed to deposit the costs of preparing the record on appeal. (*Id*. at p. 272.) In October 2012, plaintiffs filed an alter ego motion, under section 187, seeking to add SCCA to the April 2008 and October 2008 judgments as an additional judgment debtor, and thus render SCCA liable, along with SCC/BB, for paying plaintiffs' attorney fees and costs awards against SCC/BB. The court denied the alter ego motion on the sole ground that plaintiffs failed to act with diligence in bringing the motion, and plaintiffs appealed. (*Id*. at p. 273.)

In *Highland Springs*, this court reversed the order denying the alter ego motion. (*Highland Springs*, *supra*, 244 Cal.App.4th at p. 273.) This court concluded that the motion was erroneously denied based on plaintiffs' delay in bringing it, because SCCA did not show it had been prejudiced by the delay. Thus, SCCA did not meet its burden of showing that the alter ego motion was barred by laches. (*Id*. at pp. 273, 282-289.) The matter was remanded to the court to determine whether plaintiffs had proved their alter

---

[2] Undesignated statutory references are to the Code of Civil Procedure.

3

ego claim against SCCA.  (*Id*. at pp. 289-290.)  SCC/BB did not appear in *Highland Springs*.  (*Id*. at p. 272.)  The remittitur issued on May 3, 2016.[3]

Following further trial court proceedings on the alter ego motion between plaintiffs and SCCA, on February 8, 2017, the court entered a judgment in favor of plaintiffs on the motion, adjudicating SCCA to be SCC/BB's alter ego and amending the October 2008 judgments against SCC/BB to add SCCA to those judgments as an additional judgment debtor.

On February 9, 2017, notice of entry of the February 8, 2017, judgment was served, and each plaintiff filed a memorandum of costs after judgment (§ 685.070) seeking fees and costs incurred in having successfully pursued the alter ego motion.  In its cost memorandum, Highland Springs sought $446,710 in fees incurred between July 2012 and February 2017, plus $815.53 in costs.  In its cost memorandum, Banning Bench sought $216,545 in fees incurred between January 2009 and January 2017, plus $320.38 in costs.  On February 17, 2017, SCC/BB filed motions to tax each cost memorandum, and SCCA later joined SCC/BB's motions to tax.

On April 10, 2017, each plaintiff filed a motion for attorney fees, seeking the same fees listed in their cost memoranda, plus additional fees.  In its fee motion, Highland

---

[3]  In addition to Highland Springs and Banning Bench, three other plaintiffs successfully challenged the Black Bench project, and two of these three plaintiffs were awarded attorney fees and costs along with Highland Springs and Banning Bench.  The four plaintiffs who were awarded fees and costs jointly made the alter ego motion, but only Highland Springs and Banning Bench appealed the order denying the motion. (*Highland Springs*, *supra*, 244 Cal.App.4th at pp. 273-275 & fn. 2.)

4

Springs sought $737,870.25 in fees ($490,698.50 in lodestar fees [hours worked times hourly rates] times a multiplier of 1.5), plus fees not yet incurred in bringing the fee motion. Banning Bench sought $536,454.39 in fees and costs (including $324,817.50 in lodestar fees, multiplied by 1.5), plus fees not yet incurred in bringing the fee motion. Each fee motion stated that it was being brought pursuant to sections 685.040 to 685.080 of the Enforcement of Judgments Law (the EJL) (§ 680.010 et seq.) and section 1021.5. On May 10, 2017, SCC/BB and SCCA filed a joint opposition to the fee motions.

Banning Bench moved to strike SCC/BB's and SCCA's motions to tax and also filed a motion for sanctions against counsel for SCC/BB and SCCA. (§§ 128.5, 128.7.) Banning Bench claimed that SCC/BB's counsel had wrongfully caused SCC/BB to file the motions to tax, despite knowing that SCC/BB was "cancelled in California in 2010 and . . . ceased to exist in 2011."[4]

On August 3 and 4, 2017, the court denied Banning Bench's motion for sanctions and motions to strike SCC/BB's motions to tax, and entered judgment in favor of

---

[4] On April 19, 2010, SCC/BB, a Delaware limited liability company, filed a Limited Liability Company Certificate of Cancellation with the California Secretary of State, on Form LLC-4/7. The certificate stated that SCC/BB had been "dissolved" by a vote of its members. On June 1, 2011, the State of Delaware cancelled SCC/BB's certificate of formation.

On April 17, 2017, two months after SCC/BB filed its motions to tax on February 17, 2017, SCC/BB filed a certificate of revivor with the Delaware Secretary of State. On May 5, 2017, Delaware issued a certificate stating that SCC/BB was "in good standing" and that SCC/BB's annual taxes had been paid to date.

Earlier, on January 3, 2016, the California Franchise Tax Board suspended SCCA's corporate privileges based on SCCA's failure to pay its taxes. But on April 24, 2017, SCCA notified the court that the Franchise Tax Board had reinstated SCCA's corporate privileges, and on the same day, SCCA joined SCC/BB's motions to tax.

plaintiffs on their cost memoranda and fee motions. The court granted the fee motions, in part, and granted the motions to tax, in part, by awarding each plaintiff fees but limiting those fees to $80,000 for each plaintiff, substantially fewer fees than each plaintiff was requesting.

The court based its $80,000 fee awards on three considerations. First, the court ruled that plaintiffs were not entitled to recover any of the fees they incurred on appeal in *Highland Springs*, because they did not file a *timely* motion for attorney fees on appeal within 40 days after the remittitur in *Highland Springs* issued on May 3, 2016, pursuant to rule 3.1702(c)(1) of the California Rules of Court.[5]

Second, the court ruled that, under section 685.080, subdivision (a), of the EJL, plaintiffs were not entitled to recover *any* fees they incurred more than two years before they filed their fee motions.[6] Third, for the two-year period during which plaintiffs *could* recover fees, which, the court ruled, excluded any fees incurred on appeal in *Highland Springs*, the court ruled that 200 hours of attorney time for each plaintiff was a reasonable number of hours, and a blended rate of $400 per hour was a reasonable hourly rate, to award each plaintiff under section 1021.5.

---

[5] All further references to rules are to the California Rules of Court.

[6] The court treated plaintiffs' fee motions as superseding their cost memoranda, to the extent the cost memoranda included fee requests.

Thus, the court awarded each plaintiff $80,000 in fees (200 hours times $400 per hour), on each fee motion. The court expressly found no basis for applying a lodestar multiplier to the lodestar fee requests under section 1021.5. Plaintiffs timely appealed.

## III. DISCUSSION

A. *The Fees Plaintiffs Incurred in Pursuing Their Alter Ego Motion are Prejudgment Fees Incurred in Obtaining the February 8, 2017, Judgment; Thus, the Fee Motions are Governed by Rule 3.1702(b), not Rule 3.1702(c)(1) or the EJL*

Plaintiffs claim that the court, in limiting its fee awards to $80,000 for each plaintiff, erred in three respects: (1) in ruling that sections 685.040 and 685.080 of the EJL applied to the fees motions and, as a result, limiting plaintiffs' recoverable fees to fees plaintiffs incurred during the two-year period before they filed their April 10, 2017, fee motions; (2) in ruling that rule 3.1702(c)(1) applied and, as a result, ruling that plaintiffs could not recover any of the fees they incurred on appeal in *Highland Springs*, given that they did not file a motion to recover such fees within 40 days after the remittitur issued in *Highland Springs*; and (3) in not anchoring each fee award to each plaintiff's lodestar fees, given that each plaintiff was awarded $80,000.

We agree that the court erred in the first two respects. All of the fees plaintiffs incurred in pursuing their alter ego motion, from the time the motion was filed in October 2012 through the appeal in *Highland Springs*, to the February 8, 2017, judgment granting the motion, which plaintiffs sought to recover in their February 9, 2017, cost memoranda

7

and in their April 10, 2017, fee motions,[7] are *prejudgment* fees. Thus, plaintiffs' requests for these fees are governed by rule 3.1702(b), not rule 3.1702(c)(1), and not sections 685.040, 685.070, or 685.080 of the EJL.

We remand the matter for the court to redetermine the amounts of fees to award each plaintiff under section 1021.5, based on all of the fees each plaintiff incurred in pursuing the alter ego motion, without applying the EJL's two-year time limitation (§§ 685.070, 685.080) or categorically disallowing all of the fees plaintiffs incurred on appeal in *Highland Springs*. Lastly, we observe that the calculation of each plaintiff's fee award should begin with each plaintiff's requested lodestar fees.

1. Applicable Legal Principles and Standard of Review

As our state high court has observed, the Code of Civil Procedure and court rules "distinctly address three different types of costs and fees: *prejudgment* costs, including attorney fees where authorized by contract, statute or law (§ 1033.5, subd. (a)(10)), are recovered through procedures established under section 1034, subdivision (a) and rules 3.1700 and 3.1702(b); *appellate* costs and fees are recovered under section 1034, subdivision (b) and rules 3.1702(c) and 8.278; and postjudgment *enforcement* costs and fees are recovered under the Enforcement of Judgments Law, specifically sections 685.040 to 685.095." (*Conservatorship of McQueen* (2014) 59 Cal.4th 602, 608 (*McQueen*), fns. omitted.)

---

[7] The court treated plaintiffs' April 10, 2017, fee motions as superseding the fees plaintiffs sought in their February 9, 2017, cost memoranda, given that the fee motions sought the same fees listed in the cost memoranda, plus additional fees. We do the same.

The central question in this appeal is whether the fees plaintiffs sought to recover from SCCA and SCC/BB in their February 9, 2017, cost memoranda and April 10, 2017, fee motions are postjudgment fees, governed by sections 685.040, 685.070, and 685.080 of the EJL, or are instead prejudgment fees incurred in obtaining the February 8, 2017, judgment, and are therefore governed by rule 3.1702(b), and not rule 3.1702(c)(1), or the EJL. We review this question de novo, given that it involves the application of statutes and court rules to undisputed facts concerning the nature of the fees requested and the timing of the fee requests. (See *Acosta v. SI Corp.* (2005) 129 Cal.App.4th 1370, 1374.)

2. <u>Plaintiffs Sought Prejudgment Fees, Not Postjudgment Fees</u>

Section 685.040 of the EJL governs claims for costs and attorney fees incurred in enforcing a judgment. It provides: "The judgment creditor is entitled to the reasonable and necessary costs of enforcing a judgment. Attorney's fees incurred in enforcing a judgment are not included in costs collectible under this title unless otherwise provided by law. Attorney's fees incurred in enforcing a judgment are included as costs collectible under this title if the underlying judgment includes an award of attorney's fees to the judgment creditor pursuant to [section 1033.5, subd. (a)(10)(A)]."

For purposes of section 685.040, costs include attorney fees if the judgment, for which the postjudgment enforcement fees are being sought, includes an award of attorney fees pursuant to a contract (§ 1033.5, subd. (a)(10)(A)) or if the fees are authorized by a statute or law other than the EJL (*Berti v. Santa Barbara Beach Properties* (2006) 145 Cal.App.4th 70, 77 [attorney fees authorized by statute are fees otherwise "provided by

9

law" within the meaning of § 685.040]; *Rosen v LegacyQuest* (2014) 225 Cal.App.4th 375, 381-382 [same]; *McQueen*, *supra*, 59 Cal.4th at p. 613 ["section 685.040 is not itself a substantive fee-shifting statute."]).

Sections 685.070 and 685.080 allow a judgment creditor to pursue two alternative means of claiming postjudgment costs, including fees, incurred in enforcing a judgment: (1) by a memorandum of costs (§ 685.070) or (2) by a noticed motion (§ 685.080). Under section 685.070, the judgment creditor may claim costs listed in section 685.070, together with attorney fees "if allowed by Section 685.040" by filing and serving a memorandum of costs on the judgment debtor, no later than two years after the costs have been incurred, and before the judgment is fully satisfied. (§ 685.070, subds. (a), (b).) Within 10 days after the cost memorandum is served, the judgment debtor may file a motion to have the costs taxed by the court. (§ 685.070, subd. (c).)

If the judgment creditor claims costs by noticed motion (§ 685.080), the judgment creditor may claim all of the costs listed in section 685.070, plus additional costs, plus attorney fees if allowed by section 685.040. (§ 685.080, subd. (a).) Like a memorandum of costs (§ 685.070), a noticed motion for costs (§ 685.080) must be filed and served no later than two years after the costs have been incurred, and before the judgment is fully satisfied (§ 685.080, subd. (a)).[8]

---

[8] Section 685.080 provides: "(a) The judgment creditor may claim costs authorized by Section 685.040 by noticed motion. The motion shall be made before the judgment is satisfied in full, but not later than two years after the costs have been incurred. The costs claimed under this section may include, but are not limited to, costs that may be claimed under Section 685.070 . . . ."

In this case, plaintiffs filed cost memoranda *and* noticed motions to recover the fees they incurred in pursuing their alter ego motion.  On February 9, 2017, the day after the court entered the February 8, 2017, judgment granting the alter ego motion, plaintiffs filed and served their cost memoranda, which included fee requests.  The cost memoranda were filed on Judicial Council form MC-012, titled "Memorandum of Costs After Judgment," which references section 685.070.  Thus, the cost memoranda indicated that the requested costs and fees were incurred in *enforcing* a judgment (§ 685.040), rather than in *obtaining* a judgment (§§ 1032, 1033.5).[9]

On April 10, 2017, plaintiffs filed their fee motions, seeking the same fees they sought in their cost memoranda, plus additional fees.  Although the court granted the motions to tax in part, by limiting the fee awards to $80,000 for each plaintiff, the court in effect treated the fee motions as superseding the cost memoranda, to the extent that the cost memoranda included fee requests.  We do the same, given that, by their fee motions, plaintiffs sought the same fees they sought in their cost memoranda, plus additional fees.  But like the cost memoranda, which were filed on Judicial Council form MC-012, the fee motions indicated that plaintiffs were seeking postjudgment enforcement fees.  The fee motions expressly stated that they were being brought pursuant to sections 685.040 to 685.080 of the EJL, and section 1021.5.

---

[9] Judicial Council form MC-010, titled Memorandum of Costs (Summary), is designed for use in claiming costs incurred in obtaining a judgment.  (§§ 1032, 1033.5.)

11

Given the form of plaintiffs' cost memoranda and fee motions, it is not surprising that the court treated the cost memoranda and fee motions as seeking postjudgment fees incurred in enforcing plaintiffs' October 2008 judgments against SCC/BB, rather than fees incurred in obtaining the February 8, 2017, judgment adjudicating SCCA as SCC/BB's alter ego. Nonetheless, it was error to treat the cost memoranda and the fee motions (the fee requests) as seeking postjudgment fees. In substance, the fee requests sought *prejudgment* fees plaintiffs incurred in obtaining the February 8, 2017, judgment. Thus, it was error to treat the fee requests as seeking postjudgment enforcement fees, governed by sections 685.040 and 685.080, and to disallow all of the fees plaintiffs incurred more than two years before they filed their fee motions on April 10, 2017. (§ 685.080, subd. (a).)

Although the EJL does not define "enforcement" (*McQueen*, *supra*, 59 Cal.4th at p. 609), the EJL nowhere suggests that the filing and pursuit of an alter ego motion to amend a judgment to add an additional judgment debtor, under section 187, constitutes the enforcement of the judgment the movant seeks to amend. Section 187 "grants every court the power and authority to carry its jurisdiction into effect. [Citation.] This includes the authority to amend a judgment to add an alter ego of an original judgment debtor, and thereby make the additional judgment debtor liable on the judgment. [Citation.] Amending a judgment to add an alter ego of an original judgment debtor '"is an equitable procedure based on the theory that the court is not amending the judgment to

add a new defendant but is merely inserting the correct name of the real defendant.'" [Citation.]" (*Highland Springs*, *supra*, 244 Cal.App.4th at p. 280.)

As noted in *McQueen*, the EJL "addresses in detail several means of enforcing a judgment, including liens on real and personal property (§§ 697.010-697.920), writs of execution (§§ 699.010-701.830), garnishment of wages (§§ 706.010-706.154) and writs of possession or sale (§§ 712.010-716.030). . . ." (*McQueen*, *supra*, 59 Cal.4th at p. 609.) Each of these means of enforcing a judgment results, at least to some degree, in the satisfaction of the judgment. But a section 187 motion to amend a judgment to add an additional judgment debtor does nothing to satisfy the judgment the movant seeks to amend. Rather, a section 187 motion, if granted, merely allows the judgment creditor to enforce the now-amended judgment against the additional judgment debtor.[10]

Additionally, it makes no sense to apply the two-year time limitations of section 685.070 or section 685.080 to, respectively, plaintiffs' cost memoranda and fee motions. Plaintiffs pursued their alter ego motion over the course of several years—from around October 2012, when the motion was filed, to February 8, 2017, when the judgment granting the motion was entered following this court's reversal in *Highland Springs*, of the initial order denying the alter ego motion. Plaintiffs had no basis to recover any of the costs or fees they incurred in pursuing their alter ego motion until the motion was

---

[10] As plaintiffs point out, SCCA was not a "judgment debtor" within the meaning of the EJL until the February 8, 2017, judgment amended the October 2008 judgments to add SCCA to the October 2008 judgments as an additional judgment debtor. (§ 680.250 [defining "judgment debtor" as "the person against whom a judgment is rendered."].)

granted and plaintiffs became successful parties on the motion. (§§ 1021.5, 1032, 1033.5.)

As the court recognized, section 1021.5 was the only basis available to plaintiffs for claiming any fees incurred in pursuing the alter ego motion. Section 1021.5 allows the court, upon motion, to award attorney fees "*to a successful party* against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest . . . ." (Italics added.) Plaintiffs had no basis for recovering any fees incurred in pursuing the alter ego motion, from SCCA or SCC/BB, until the February 8, 2017, judgment was entered and plaintiffs became "successful" parties on the alter ego motion. (§ 1021.5.)

3. Rule 3.1702(b)(1), Not Rule 3.1702(c)(1), Applies to the Fee Requests

Rule 3.1702(b)(1) governs claims for *prejudgment* attorney fees. It provides: "A notice of motion to claim attorney's fees for services up to and including the rendition of judgment in the trial court—including attorney's fees on an appeal before the rendition of judgment in the trial court—must be served and filed within the time for filing a notice of appeal under rules 8.104 and 8.108 in an unlimited civil case . . . ."

All of the fees plaintiffs incurred in pursuing their alter ego motion, including the fees plaintiffs incurred in appealing the initial order denying their alter ego motion in *Highland Springs*, are prejudgment fees incurred in obtaining the February 8, 2017, judgment granting the alter ego motion. Thus, the February 8, 2017, judgment is the

14

basis for awarding plaintiffs prejudgment fees and costs incurred in successfully pursuing their alter ego motion under rule 3.1702(b)(1) and section 1021.5.

The court ruled that plaintiffs could not recover any of the fees they incurred on appeal in *Highland Springs* because their requests for these fees were untimely under rule 3.1702(c)(1). Rule 3.1702(c)(1) provides: "A notice of motion to claim attorney's fees on appeal—*other than attorney's fees on appeal claimed under [rule 3.1702](b)*—under a statute or contract requiring the court to determine entitlement to the fees, the amount of the fees, or both, must be served and filed within the time for serving and filing the memorandum of costs under rule 8.278(c)(1) in an unlimited civil case . . . ." (Italics added.) Rule 8.278(c)(1), in turn, provides that a party claiming costs awarded by a reviewing court must serve and file a verified memorandum of costs in the superior court, under rule 3.1700, within 40 days after the remittitur issues. Because plaintiffs did not file a memorandum of costs within 40 days after the remittitur in *Highland Springs* issued on May 3, 2016, the court treated plaintiffs' requests for fees incurred on appeal in *Highland Springs* as untimely. But this, too, was error, because all of the fees plaintiffs requested, including the fees they incurred on appeal in *Highland Springs*, were governed by rule 3.1702(b), not rule 3.1702(c)(1).

*Yuba Cypress Housing Partners, Ltd v. Area Developers* (2002) 98 Cal.App.4th 1077 is analogous and instructive. There, the plaintiff sued the defendant to rescind a real estate contract and to recover monies the plaintiff had paid the defendant on the contract. After the trial court entered judgment for the defendant, the plaintiff prevailed

15

on appeal; the judgment against the plaintiff was reversed, and the case was remanded to the trial court to calculate the plaintiff's monetary recovery and to enter a new judgment in the plaintiff's favor. (*Id*. at p. 1080.) On remand, the plaintiff moved for an award of costs and attorney fees he incurred as the prevailing party on the contract. (*Ibid*.) In opposition, the defendant argued that the plaintiff's claim for fees incurred on appeal was untimely, under former rule 870.2(c)(1), the predecessor to rule 3.1702(c)(1). (See *id.* at p. 1084.) The trial court agreed with the defendant, and denied the plaintiff any fees he incurred on the appeal as untimely requested. (*Id*. at pp. 1083-1084.)

The *Yuba* court reversed. After noting that former rule 870.2(c) (the predecessor to rule 3.1702(c)), expressly did not apply to attorney fees claimed on appeal under former rule 870.2(b) (the predecessor to rule 3.1702(b)(1)), the court concluded that former rule 870.2(b) applied to the plaintiff's claim for appellate fees. (*Yuba Cypress Housing Partners, Ltd. v. Area Developers*, *supra*, 98 Cal.App.4th at p. 1085.) The court explained: "Although plaintiff's appellate attorney fees were incurred after rendition of the initial judgment in favor of defendants, that judgment was reversed and the case was remanded with directions for the trial court to enter a new judgment in favor of plaintiff. As a result, [the plaintiff's] appellate attorney fees were incurred *before* the trial court's ultimate rendition of judgment in [the plaintiff's] favor. Thus, rule 870.2(b)(1) applies . . . ." (*Ibid*.)[11]

---

[11] Legal commentators have further clarified when rule 3.1702(b)(1), rather than rule 3.1702(c)(1), applies to a claim for appellate fees: "If a new judgment on the merits must be entered following the appeal, either because the prior judgment has been

Similarly here, the fees plaintiffs incurred on appeal in *Highland Springs* were incurred after the trial court issued its initial order and judgment denying plaintiffs' alter ego motion. That order and judgment was reversed on appeal in *Highland Springs*, and the case was remanded to the trial court for further proceedings on the alter ego motion which resulted in the trial court's rendition of the February 8, 2017, judgment granting the alter ego motion. Thus, rule 3.1702(b)(1), not rule 3.1702(c)(1), applies to plaintiffs' requests for fees incurred on appeal in *Highland Springs*.

Plaintiffs timely moved to recover the fees they incurred on appeal in *Highland Springs*. Under rule 3.1702(b)(1), plaintiffs' fee motions were required to be served and filed within 60 days after notice of entry of the February 8, 2017, judgment was served on February 9, 2017. (Rules 3.1702(b)(1), 8.104(a)(1)(B).) The fee motions were filed on

---

reversed or the judgment must be amended, Cal. Rules of Ct. 3.1702(b) applies. Under that rule, trial court fees sought for the first time after an appeal (*i.e.*, when a prior adverse decision is reversed on appeal) . . . must be claimed within 60 days after entry of a new judgment in the trial court. Any appellate fees that have been incurred before the new final judgment should be claimed along with any prejudgment trial court fees under Cal. Rules of Ct. 3.1701(b)(1) (requiring motions be filed within 60 days from entry of judgment)." (Pearl, Cal. Attorney Fee Awards (Cont.Ed.Bar 3d ed. 2018), § 11.43, p. 11-43.) "The subdivision (b)(1) timing rule for claiming fees incurred on an interim appeal applies (not the subdivision (c)(1) deadline) when the appellate court *reverses and remands* for further proceedings entailing the entry of a new judgment." (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2018) ¶ 14.122.11, p. 14-34.) Section 685.080, subdivision (a) also does not apply to claims for appellate attorney fees. (*McQueen*, *supra*, 59 Cal.4th at p. 608 ["'[O]ur procedural statutes and rules do not treat civil appeals as a part of the enforcement of judgment process.'"]; Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs, *supra*, at ¶ 14.122.15, pp. 14-34 to 14-35.)

April 10, 2017, exactly 60 days after Highland Springs served notice of entry of the February 8, 2017, judgment.

    4.   <u>Remand to Redetermine the Amount of Each Plaintiff's Fee Award</u>

In awarding each plaintiff $80,000 in attorney fees (§ 1021.5) for all of the legal work plaintiffs performed in pursuing their alter ego motion, through the rendition and entry of the judgment granting the motion on February 8, 2017, the court erroneously excluded all of the fees plaintiffs incurred on appeal in *Highland Springs* and all of the fees plaintiffs incurred more than two years before they filed their fee motions on April 10, 2017. (§ 685.080, subd. (a).) Given these errors, the matter must be remanded for the court to redetermine the amount of each plaintiff's fee award.

In redetermining the amount of each plaintiff's fee award, the court must consider all of the fees plaintiffs incurred in pursuing their alter ego motion. (*Serrano v. Unruh* (1982) 32 Cal.3d 621, 639 ["[A]bsent circumstances rendering the award unjust, fees recoverable under section 1021.5 ordinarily include compensation for all hours reasonably spent, including those necessary to establish and defend the fee claim."]; *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1141 ["fees on fees" or fees incurred in claiming fees properly included in fee award]; *Wallace v. Consumers Cooperative of Berkeley, Inc.* (1985) 170 Cal.App.3d 836, 849 ["[A] trial court may, in its discretion, determine that time reasonably expended on an action includes time spent on other separate but closely related court proceedings."].)

18

Plaintiffs claim the court abused its discretion in calculating each $80,000 fee award, because each fee award was "untethered from 'all the hours reasonably spent'" by counsel for each plaintiff in pursuing the alter ego motion, and the awards were not based upon the "'careful compilation of the time spent' by each attorney." (See (*Serrano v. Priest* (1977) 20 Cal.3d 25, 49 [no abuse of discretion in awarding $800,000 in fees to be equally shared by two law firms representing the plaintiffs].) As plaintiffs point out, Highland Springs claimed 949.23 in attorney hours for its efforts in pursuing the alter ego motion between 2012 and 2017, while Banning Bench claimed 368.7 in attorney hours for its efforts over the same period.

Plaintiffs claim that "[t]he arbitrary nature" of their respective $80,000 fee awards "is underscored by the fact that counsel for Highland Springs spent 581.53 more hours than counsel for Banning Bench . . . yet the trial court concluded counsel for each [plaintiff] reasonably worked the same number of hours . . . ." We leave the question of the amount of each plaintiff's fee award for the court's redetermination on remand, based on all of the hours claimed by each plaintiff in pursuing the alter ego motion. We observe, however, that fee awards under section 1021.5 should be "fully compensatory" and should begin with "a lodestar figure based on the reasonable hours spent, multiplied by the hourly prevailing rate for private attorneys in the community conducting *noncontingent* litigation of the same type." (*Ketchum v. Moses*, *supra*, 24 Cal.4th at p. 1133; *Serrano v. Unruh*, *supra*, 32 Cal.3d at p. 625.)

19

B. *Plaintiffs' Claims Concerning the Effect of SCC/BB's Cancelled Status are Moot*

Plaintiffs claim the court erroneously granted SCC/BB's motions to tax plaintiffs' cost memoranda, in part, by limiting each plaintiff's fee award to $80,000, and that the court should have instead granted plaintiffs' motions to strike the motions to tax, because when SCC/BB filed the motions to tax on February 17, 2017, it was not authorized to defend or pursue any action or proceeding in a California court based on its 2010 dissolution and the 2011 cancellation of its certificate of formation.[12] SCC/BB and SCCA argue this claim is moot, "because the same fee issues were placed before the court by [plaintiffs] on their [fee] motions . . . ." We agree with SCC/BB and SCCA.

Although the court granted SCC/BB's motions to tax in part by limiting plaintiff's fee awards to $80,000 each, the motions to tax were superseded by plaintiffs' April 10, 2017, fee motions, which sought all of the fees plaintiffs requested in their cost memoranda, plus additional fees. SCC/BB and SCCA filed joint opposition to the fee motions. Thus, even if we were to agree that plaintiffs' motions to strike the motions to tax should have been granted, we would not be granting plaintiffs any effective relief. The rulings on plaintiffs' fee motions, limiting plaintiffs' fee awards to $80,000 each, would be unaffected. SCC/BB and SCCA were revived and in good standing on May 10, 2017, when they filed joint opposition to the fee motions. (See *Jensen v. The Home*

---

[12] See footnote 4, *ante*.

20

*Depot, Inc.* (2018) 24 Cal.App.5th 92, 98 [an issue is moot if events render it impossible for the appellate court to grant effective relief].)[13]

## IV.  DISPOSITION

The April 4, 2017, orders awarding plaintiffs $80,000 each in attorney fees are reversed.  The matter is remanded to the superior court with directions to redetermine the amount of each plaintiff's fee award, consistent with the views expressed in this opinion.  The parties shall bear their respective costs on appeal.  (Rule 8.278.)

CERTIFIED FOR PUBLICATION

RAMIREZ
P. J.

We concur:

McKINSTER
J.

CODRINGTON
J.

---

[13] SCC/BB and SCCA have filed a request for judicial notice, asking this court to take judicial notice of the State of Delaware's Limited Liability Company Act.  (6 Del. Code § 18-101 et seq.)  We grant the request.  Judicial notice of the statutes by this court is mandatory, given that the trial court properly took judicial notice of the statutes. (*Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 924, fn. 1; Evid. Code, §§ 452, subd. (c), 459, subd. (a).)  But the statutes are not relevant to the dispositive issues in this appeal.  Although SCC/BB was dissolved and its certificate of formation was cancelled when it filed the motions to tax, plaintiffs' claim that the court erroneously denied plaintiffs' motions to strike the motions to tax based on SCC/BB's cancelled status is moot.  As we have explained, the same fee issues raised in the motions to tax were raised in the fee motions, and we have reviewed those issues on appeal from the orders on the fee motions.